DOUGLAS, J., concurs in this opinion.

Request of the House of Representatives No. 7797

### OPINION OF THE JUSTICES

June 10, 1977

The following resolution was adopted by the house of representatives on May 5, 1977, and filed with the supreme court on May 9, 1977:

"WHEREAS, there is presently pending before the House of Representatives House Bill 584, an act imposing a tax on capital gains; and

"WHEREAS, House Bill 584 would impose a 5% tax on the net income of resident individual taxpayers derived from the sale or

exchange of capital assets as determined by reference to federal law; and

"WHEREAS, RSA 77 (commonly known as the Interest and Dividends Tax) presently imposes a 4-1/4% tax on the gross income of resident individual taxpayers (among others) derived from the receipt of certain interest and dividends; and

"WHEREAS, House Bill 584 proposes, by various exemptions— including an exemption for capital gains produced by the sale of the principal residence of a person sixty-five years of age or older —by a provision for the non-recognition of gain, by a provision for abatement of taxes "for good cause" and by certain tax credits, to minimize the burden of this tax on those persons whom the legislature judges least able to pay or upon whom the legislature has determined it would be unfair to impose this new tax burden; and

"WHEREAS, the imposition of the tax proposed in House Bill 584 raises important questions of constitutional law

"Now Therefore Be It Resolved that the Justices of the Supreme Court be respectfully requested, upon this solemn occasion, to give their opinion upon the following important questions of law:

"1. May net income derived from the sale or exchange of capital assets be taxed at a rate differing from the rate of tax imposed on gross income derived from the receipt of certain interest and dividends?

"2. If the answer to the first question is "yes", must the rate of such a tax be uniform with the rate of any other state tax now levied, such as the Business Profits Tax?

"3. Would any constitutional provision be violated by the exemptions contained in sections 2 (II), 5 and 7 (I) of the proposed statute, by the non-recognition provision in section 3 (I) of the proposed statute, by the credit provided for in section 6 of the proposed statute, or by the abatement provision in section 12 of the proposed statute?

"4. In all respects other than those to which the preceding questions relate, is House Bill 584 constitutional on its face?

"Be It Further Resolved, that the Clerk transmit ten copies of this resolution and of HB 584 to the Clerk of the Supreme Court for consideration by the Court."

The following answers were returned:

*To the House of Representatives:*

The undersigned justices of the supreme court submit the following answers to your questions with respect to House bill 584 contained in your resolution adopted May 5, 1977, and filed with the court on May 9, 1977. Interested parties were permitted to file memoranda until May 23, 1977. None was received.

House bill 584 would impose a 5% tax on the net income of resident individual taxpayers derived from the sale or exchange of capital assets as determined by reference to federal law.

Your first question is whether net income derived from the sale or exchange of capital assets may be taxed at a rate differing from the rate of tax imposed on gross income derived from the receipt of certain interest and dividends?

House bill 584 proposes to impose a tax at the rate of 5% on net income derived from capital gains. RSA ch. 77 (commonly known as the Interest and Dividends Tax) now imposes a tax at the rate of 4-1/4% on gross income derived from the latter sources. The legislature has broad discretionary powers to classify subjects of taxation. *Opinion of the Justices,* 115 N.H. 306, 308, 339 A.2d 450, 451 (1975). Classifications made for just reasons do not violate any provisions of our constitution. *Opinion of the Justices,* 112 N.H. 32, 34, 287 A.2d 756, 757 (1972). Part II, article 5 of our constitution only requires that all subjects of taxation within a given class be taxed at a uniform rate. *Opinion of the Justices,* 111 N.H. 131, 134, 276 A.2d 817, 819 (1971). The question is therefore whether capital gains are sufficiently distinguishable from interest and dividends as to make it apparent that there is just reason to tax capital gains at a rate different from the rate imposed by RSA ch. 77 on income derived from certain interests and dividends. *Opinion of the Justices,* 110 N.H. 117, 122, 262 A.2d 290, 294 (1970).

Section 1, paragraph III of the proposed statute defines "[gains] from the sale or exchange of capital assets" as "the net gain as determined for federal income tax purposes, after due allowance for losses and holding periods, (a) from sales or exchanges of capital assets or assets treated as capital assets, other than notes, bonds or other obligations of the state of New Hampshire or any of the political subdivisions thereof, or its or their respective agencies or instrumentalities, or (b) from transactions or events taxable to

the taxpayer as such sales or exchanges, and being the net amount includable in the taxpayer's adjusted gross income, with respect to all such sales, exchanges, transactions, or events, under the provisions of the Internal Revenue Code in effect for the taxable year."

Basically, capital gains represent the appreciation in value of certain property of a taxpayer, realized upon the sale or exchange of that property. I.R.C. §§ 1221–1223; 3B J. Mertens, Federal Income Taxation § 22.01 (1973). Interest, on the other hand, is a form of compensation "for the use, or forbearance, or detention of money." 1 J. Mertens, *supra* § 6A.01. Dividends, such as are taxed pursuant to RSA 77:4, are also dissimilar to capital gains in that they represent a distribution of the earnings and profits of a corporation, partnership, or other association, rather than an appreciation in value of the taxpayer's investment. *See Conner v. State,* 82 N.H. 126, 132, 130 A. 357, 360 (1925). It is apparent, therefore, that capital gains are a form of income sufficiently distinguishable from interest and dividends as to justify classifying them separately for purposes of taxation. The reason for imposing a higher tax on capital gains than on interest and dividends is a matter for the legislature. *Estate of Kennett v. State,* 115 N.H. 50, 53, 333 A.2d 452, 454 (1975). In view of the very different characteristics of these two classes of income, the legislature may find a rational basis for taxing capital gains at a higher rate. *Opinion of the Justices,* 101 N.H. 549, 558, 137 A.2d 726, 732 (1958); *see Opinion of the Justices,* 110 N.H. 117, 124, 262 A.2d 290, 296 (1970).

Our answer to your first question is therefore "Yes." Net income derived from the sale or exchange of capital assets may be taxed at a rate differing from the rate of tax imposed on gross income derived from the receipt of certain interest and dividends.

Your second question is whether the rate of a capital gains tax must be uniform with the rate of any other state tax now levied, such as the business profits tax. The capital gains tax proposed by House bill 584 is to be imposed on the net gains of every resident individual derived from the sale or exchange of capital assets within or without New Hampshire. The business profits tax (RSA ch. 77-A) is imposed on the net business profits of every business organization attributable to operations within New Hampshire. *Scott & Williams, Inc. v. Board of Taxation,* 117 N.H. 189, 372 A.2d 1305 (1977).

■ We are of the opinion that the tax proposed by House bill 584 would differ in essential characteristics from the business profits tax. This being so, we are of the opinion that the tax proposed by this bill may be at a rate differing from that of the business profits tax without violating our constitution. *Opinion of the Justices,* 111 N.H. 136, 140, 276 A.2d 821, 823 (1971). Our answer to your second question is "No," the proposed tax on capital gains of individuals proposed by House bill 584 need not be at the same rate as the business profits tax imposed by RSA ch. 77-A.

We must point out, however, that capital gains can be a part of the total business profits income taxable under the business profits tax to every business organization in this state. RSA 77-A:1 III. As we read House bill 584 in its present form, resident individuals could be taxable on some capital gains both under RSA ch. 77-A and under the tax proposed by the present bill. *See,* e.g., RSA 77-A:1 III(d); RSA 77-A:1 III(c), (e) (Supp. 1975). Hence consideration should be given to avoid double taxation of capital gains income under both of these taxes. *Opinion of the Justices,* 110 N.H. 117, 123, 262 A.2d 290, 295 (1970); *Concord Inv. Corp. v. N.H. Tax Comm'n,* 114 N.H. 105, 108, 109, 316 A.2d 192, 194–95 (1974).

■ Your third question concerns the constitutionality of various provisions included in the proposed statute. Section 2 paragraph II provides that those taxpayers whose net capital gains do not exceed $100, or $200 in the case of a husband and wife, shall not be required to file any return under the proposed chapter. Section 5 provides exemptions in the amount of $100 for individual taxpayers and $200 for spouses filing jointly. This section further provides an additional exemption of $100 for any individual sixty-five years of age or older, as well as an additional exemption of $100 for any individual who is blind. Although exemptions may, theoretically, produce inequalities in the tax burden, the legislature clearly has the power to grant a reasonable exemption, on a uniform basis. *Opinion of the Justices,* 105 N.H. 22, 24, 192 A.2d 22, 23 (1963); *Opinion of the Justices,* 82 N.H. 561, 570–73, 138 A. 284, 289–90 (1927).

■ The $100 exemption and the $200 exemption for married couples, from filing and from the tax if taxable, violate no constitutional provisions. The additional exemption for those who have reached the age of sixty-five is also valid. The elderly, whose income generally drops once they retire, constitute a recognized

class of people for whom relief from the burdens of taxation is justified. *Opinion of the Justices,* 110 N.H. 206, 207–08, 266 A.2d 111, 113 (1970); *Opinion of the Justices,* 105 N.H. 22, 24, 192 A.2d 22, 23–24 (1963). The additional exemption granted to those individuals who are blind is likewise valid, as their disability may limit their ability to earn income, and may also cause them to incur additional expenses. *Id.* at 24, 192 A.2d at 24; *see Opinion of the Justices,* 111 N.H. 136, 142, 276 A.2d 821, 824 (1971).

Section 7 I of the proposed statute provides for an exemption and deduction from net capital gains of any amount arising from the sale or exchange of an individual's or a married couple's principal residence. This section applies only when the individual or either of the spouses has attained sixty-five years of age and has used the property as the principal residence for at least five of the eight years immediately preceding the date of sale or exchange. The section further limits the availability of this exemption and deduction by allowing it for only the first such sale or transaction made by an eligible taxpayer after the effective date of the statute.

■ As discussed previously, the legislature may, without violating our constitution, classify separately persons sixty-five years of age and older for purposes of reasonable tax relief. Inclusion of the capital gain realized from the sale or exchange of a principal residence for purposes of the capital gains tax might impose on the elderly, with limited sources of income, an unduly harsh tax burden. Relief to these people from such a tax burden is therefore reasonable. Similar relief is provided by section 121 of the Internal Revenue Code. Providing this exemption and deduction only for gains arising from the sale or exchange of a principal residence also falls within the bounds of the legislature's broad discretion to classify property for purposes of taxation. *Opinion of the Justices,* 110 N.H. 206, 207–08, 266 A.2d 111, 113 (1970). It is evident that property used as a principal residence is unlike any other property which a taxpayer may own and from which capital gains might be realized. The sale or exchange of such property may produce rather substantial gains, and the legislature may choose not to discourage elderly persons who wish to sell their homes and move to smaller quarters. Principal residences therefore constitute a reasonably distinct class of property for which the legislature may allow a tax exemption and deduction not allowed. for any other property. *Opinion of the Justices,* 111 N.H. 136, 142, 276 A.2d 821, 824

(1971). The proposed exemption of section 7 I therefore violates no constitutional provision.

Paragraph I of section 3 of the proposed statute provides, "[i]f property (in this section called 'old residence') used by the taxpayer as his principal residence is sold by him after the effective date of this chapter, and, within a period beginning 18 months before the date of such sale and ending 18 months after such date, property (in this section called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in paragraph II) of the old residence exceeds the taxpayer's cost of purchasing the new residence." This nonrecognition of gain differs from the exemption from taxation under section 7 and applies to all taxpayers regardless of age.

█ Again, the separate classification of principal residences is a reasonable one for purposes of this special nonrecognition of gain section. A similar provision is contained in section 1034 of the Internal Revenue Code. That provision was enacted for the purpose of relieving taxpayers of the tax burden they might face in situations when they were forced to acquire a new residence due to a change in family size or due to a change in their place of employment. J. Chommie, Federal Income Taxation § 141, at 435 (2d ed. 1973). The legislature may properly provide for such relief through the nonrecognition of gain provision contained in section 3 of the proposed statute. *Opinion of the Justices,* 114 N.H. 174, 178, 317 A.2d 568, 570–71 (1974).

Section 6 of the proposed statute provides for a credit in the amount of taxes paid to another state as follows: "A credit against the tax imposed under this chapter shall be allowed for a tax paid to another state with respect to any gain from the sale or exchange of real property located in that state which had not been held for investment, income producing or any business purpose by a taxpayer subject to the tax imposed by this chapter. The credit allowed herein shall not exceed the lesser of (a) the tax paid to the other state with respect to such gain or (b) that proportion of the total tax due under said chapter which the amount of gain taxed in both this and another state and qualifying for this credit bears to the entire net gain of the taxpayer for the same taxable year for which a return is filed under said chapter." It also provides for a redetermination of the tax in certain instances.

■■ The state may validly impose a tax on the capital gains income of a resident, even though such gains are derived from the sale or exchange of real property located in another state. *Conner v. State,* 82 N.H. 126, 132, 130 A. 357, 360–61 (1925). The credit granted by the proposed section 6 amounts, in essence, to an exemption from tax liability with respect to certain capital gains. *Opinion of the Justices,* 97 N.H. 533, 536, 81 A.2d 845, 848 (1951); *Keyes v. Chambers,* 209 Ore. 640, 645, 307 P.2d 498, 501 (1957). As such, it is necessary that the exemption granted be just and reasonable. *Opinion of the Justices,* 82 N.H. 561, 573, 138 A. 284, 290 (1927). The purpose behind allowing a credit for taxes paid another state is to alleviate the burden of double taxation on the same income. *Concord Inv. Corp. v. N.H. Tax Comm'n,* 114 N.H. 105, 108, 109, 316 A.2d 192, 194–95 (1974); *Keyes v. Chambers supra.* The ceiling on the credit allowed serves to ensure that the taxpayers affected nevertheless bear an appropriate tax burden in this state. *State v. Robinson Land and Lumber Co1,* 262 Ala. 146, 151, 77 So. 2d 641, 646 (1954). Credits are only allowed for taxes paid on gains derived from the sale or exchange of real property which was not held for investment, income producing, or other business purposes. As the realization of gain from the sale or exchange of such real property may be merely incidental to the primary purpose for which it was held, the grant of some tax relief by way of the credit provisions in section 6 is just and reasonable.

■ Section 12 of the proposed statute provides for abatement of the whole or any part of the capital gains tax assessed "[f]or good cause, or when the commissioner judges the tax is uncollectable." Similar provisions are contained elsewhere in our tax statutes. RSA 76:16 provides for abatement of local taxes "for good cause shown." RSA 77:25 provides for abatement of the interest and dividends tax "in the case of undue hardship or when, in the judgment of the commission, such abatement should be made." Provisions for the abatement of taxes have been included in our statutes for over one hundred fifty years. In *Briggs' Petition,* 29 N.H. 547 (1854), the court held that "poverty and inability to pay are good cause . . . to abate taxes." *Id.* at 552. The court interpreted the phrase "for good cause shown" to mean an abatement was necessary if justice required that it be made. *Id.* at 551. Abatement of taxes for those who are unable to pay them is a form of relief from the burden of taxation, *id.* at 552, and may be provided for by the legislature without violating any provision of our constitu-

tion. *Opinion of the Justices*, 105 N.H. 22, 24, 192 A.2d 22, 23 (1963); *State v. Railway*, 84 N.H. 313, 315, 150 A. 14, 15 (1930).

For the reasons given with respect to each of the sections of the proposed statute which was the object of your inquiry, the answer to your third question is "No." There are no provisions of our constitution which would be violated by the terms of these sections.

As to your fourth question, whether House bill 584 is otherwise constitutional on its face, we do not consider it is within our province to give a detailed answer. Considering the complexity of the bill and the absence of memoranda, we have not undertaken to study all its provisions in every detail to ascertain whether any provision other than those specifically covered by your questions may be objectionable. With that qualification we answer "Yes", House bill 584 appears constitutional on its face except for the double taxation problem previously mentioned in conjunction with our answer to your second question.

FRANK R. KENISON
EDWARD J. LAMPRON
WILLIAM A. GRIMES
MAURICE P. BOIS
CHARLES G. DOUGLAS III