Requests of House of Representatives
No. 83-137
No. 83-158

# OPINION OF THE JUSTICES

May 6, 1983

The Honorable House of Representatives has requested opinions of the justices concerning the constitutionality of two legislative proposals that would modify or replace the current scheme of taxation of business profits in this State, RSA chapter 77-A. Because the proposals raise similar issues, we are responding to the requests in one opinion.

I. *Request for Opinion on House Bill 316.*

The following request of the House of Representatives for an opinion of the justices was adopted April 7, 1983, and filed with the Supreme Court on April 8, 1983:

"Whereas, HB 316 would establish an alternate tax on business organizations which are currently subject to a tax on their net incomes under the business profits tax, RSA 77-A; and

"Whereas, HB 316 establishes a class of property, 'alternate business profits,' intended to be distinct from 'taxable business profits,' or net profits, which are currently subject to taxation under RSA 77-A; and

"Whereas, 'alternate business profits,' as defined in HB 316 means gross business income of the business organization, reduced by an adjustment, an apportionment factor and certain limited deductions, all as defined in the bill and in a proposed amendment; and

"Whereas, HB 316 would impose a tax at a uniform rate of one percent on 'alternate business profits' to be paid in the event the resulting tax, less allowable credits, exceeds the tax that would be payable by a business organization on its 'taxable (net) business profits'; and

"Whereas, the stated purpose of the bill is to spread the burden of taxation more equally among all business organizations; now therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:

"1. Would establishment of 'alternate business profits' as a class of property, as proposed and defined in HB 316, exceed a reasonable exercise of the General Court's power to classify property for purposes of taxation, under Part II, Article 6 of the New Hampshire Constitution?

"2. Would enactment of HB 316 which provides for taxation of 'alternative business profits' [sic], which is determined with no specific compensation deductions as an alternative to taxation of the business profits under RSA 77-A which allows a 'reasonable compensation deduction,' have the effect of impermissibly classifying taxpayers under Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution and as discussed by this Court in *Opinion of the Justices*, 106 N.H. 202 (1965)?

"3. If the answer to questions 1 and 2 are in the negative, would imposition of a tax on 'alternate business profits' at the uniform rate set forth in HB 316 offend the requirements for equality and proportionality mandated by Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution?

"4. If the answers to questions 1, 2 and 3 are in the negative, would the requirements of Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution be offended by the requirement of HB 316 that the tax on 'alternate business profits' be paid if, after allowable credits, it would exceed the tax that would be payable by the business organization on 'taxable (net) business profits' under RSA 77-A?

"That the clerk of the House transmit 7 copies of this resolution to the Justices of the Supreme Court along with an equal number of copies of HB 316 and the proposed amendment to HB 316."

The following answers were returned:

*To the House of Representatives:* The Justices of the Supreme Court make the following reply to your request for advice with respect to House Bill 316. Interested parties were permitted to file memoranda until April 18, 1983. A memorandum on behalf of the Government Fiscal Policy Committee of the New Hampshire Business and Industry Association was received.

The stated purpose of House Bill 316 is to spread the burden of taxation more equitably, because under the current scheme, RSA chapter 77-A, the burden falls on only a limited number of business organizations. The present business profits tax is imposed on "taxable business profits," which are, in effect, the "net" taxable income of a business. RSA 77-A:2 (Supp. 1981); *see Johnson & Porter Realty Co. v. Comm'r of Rev. Admin.*, 122 N.H. 696, 697, 448 A.2d 435, 436 (1982). House Bill 316, with its proposed amendments, would modify RSA chapter 77-A by creating an alternative tax on the "alternate business profits" of business organizations. Under this bill, a business organization would be required to pay the greater of: (1) a tax

of 8.75% on its "taxable business profits"; or (2) a tax of 1% on its "alternate business profits."

The bill defines "alternate business profits" as being the gross income of a business for federal income tax purposes reduced by an adjustment, certain limited deductions, and a method of apportionment described in RSA 77-A:3 (Supp. 1981). The adjustment allows for the deduction of the greater of either twenty percent of the business organization's gross business income, or the amount attributable to merchandise bought for manufacture or sale by the business organization during the taxable period. In the event the business organization suffers a "loss," as determined by the statute, a deduction is allowed for the loss. In addition, one-half of in-State energy costs and the sum of $50,000 may be deducted from gross business income. Finally, in addition to the credits specified in RSA 77-A:5, the bill provides a credit for capital investment.

■ The first question presented is whether "alternate business profits" is a taxable class of property. Gross income is a class of property taxable under part two, article six of the New Hampshire Constitution. *Opinion of the Justices,* 110 N.H. 117, 122, 262 A.2d 290, 295 (1970); *Opinion of the Justices,* 95 N.H. 537, 539, 64 A.2d 320, 321 (1949). If "alternate business profits" were defined simply as being the gross income of a business, such classification would be valid for purposes of taxation. The class of property proposed to be taxed under the statute, however, is the gross income of a business, with an adjustment and the various deductions and credits mentioned above. Therefore, the specific adjustment, deductions, and credits provided must be considered to determine whether the proposed class of taxable property violates part two, article six of the State Constitution.

■■ The legislature may create reasonable exemptions such as adjustments, deductions, and credits, on a uniform basis. *Opinion of the Justices,* 117 N.H. 512, 517, 374 A.2d 964, 967 (1977); *cf. Opinion of the Justices,* 110 N.H. 206, 266 A.2d 111 (1970). House Bill 316 would allow one adjustment, for *either* twenty percent of a business' gross business income *or* an unlimited amount attributable to merchandise bought for manufacture or sale by the business organization, whichever is greater. As a result, a labor intensive business whose purchases of merchandise for manufacture or sale are less than twenty percent of its gross business income would be limited to an adjustment of twenty percent, whereas a business organization with extensive purchases of merchandise bought for manufacture or sale would have an unlimited adjustment. Accordingly, the resulting adjustment does not satisfy the requirement of uniformity.

■ Our review of the proposed deductions is limited by our inability to anticipate all possible applications, but at the present time the deductions appear to be valid. The deduction applicable to all businesses which suffer a "loss" is both reasonable and uniform, because it applies uniformly to all business organizations and its purpose is to recognize the impact of an actual loss on a business' ability to pay taxes. The bill's deduction for one-half of a business' energy costs also appears to be valid, as it is uniform in rate and available to all business organizations. The flat deduction of $50,000 recognizes the impact that low volume has on a business' ability to pay taxes, and it, too, is uniform in its application.

■ The credit for capital investment appears to be uniform, in that it is available to all business organizations. While on its face the credit does not appear to be unreasonable, this conclusion is necessarily speculative, as we have not yet had an opportunity to view its actual fiscal impact.

■ In summary, then, it is our opinion that the legislative establishment of "alternate business profits" as a taxable class of property, with the exception of the adjustment provision, appears to be constitutional, and our answer to the first question is therefore in the negative.

■ The next question is whether enactment of House Bill 316, providing for the taxation of "alternate business profits" *as an alternative* to the taxation of the "taxable business profits" under RSA 77-A:2 (Supp. 1981), would impermissibly classify taxpayers under the New Hampshire Constitution, pt. I, art. 12; pt. II, art. 5. Justices of this court have consistently interpreted the New Hampshire Constitution as requiring that all property *within a given class be taxed at a uniform rate. Opinion of the Justices,* 117 N.H. at 515, 374 A.2d at 966; *see Johnson & Porter Realty Co. v. Comm'r of Rev. Admin.,* 122 N.H. at 698, 448 A.2d at 436. The bill establishes differing rates of taxation, namely a 1% tax on "alternate business profits" and a 8.75% tax on "taxable business profits." The question presented is whether "alternate business profits" are sufficiently distinguishable from "taxable business profits" to constitute two separate classes of property taxable at different rates. *See Opinion of the Justices,* 117 N.H. at 515, 374 A.2d at 966; *see also Opinion of the Justices,* 110 N.H. at 122–23, 262 A.2d at 295.

In our opinion the statutory classifications of "alternate business profits" and "taxable business profits" are essentially classifications of *business income. See Johnson & Porter Realty Co. v. Comm'r of Rev. Admin.,* 122 N.H. at 698, 448 A.2d at 436. Although it is not

contemplated in the proposed legislation, taxation of one business entity under *both* methods could, in fact, result in double taxation in a manner not permitted under our Constitution. *Opinion of the Justices*, 106 N.H. 202, 207, 208 A.2d 458, 462 (1965); N.H. CONST. pt. I, art. 12; pt. II, art. 5.

■■ The effect of the legislation would be to establish two distinct classes of taxpayers: those who would be required to pay a 1% tax on their "alternate business profits," and those who would pay a 8.75% tax on their "taxable business profits." Predictably, smaller business corporations, proprietorships, and partnerships would fall into the first class, whereas larger corporations would fall into the second. While the legislature may, as we have noted above, attempt to remedy the disparity in the tax burden borne by different business entities in this State, it must substantially treat *all* business entities uniformly and equally. *See Johnson & Porter Realty Co. v. Comm'r of Rev. Admin.*, 122 N.H. at 698, 448 A.2d at 436–37. It may not create alternative systems of taxation which inevitably result in two classes of taxpayers, paying differing rates of tax on essentially the same class of property, business income. Question two therefore is answered in the affirmative.

In view of our answers to questions one and two, we need not address the remaining questions.

II. *Request for Opinion on House Bill 674.*

The following request of the House of Representatives for an opinion of the justices was adopted April 20, 1983, and filed with the Supreme Court on April 22, 1983:

"Whereas, HB 674-FN would repeal the business profits tax, RSA 77-A, and would replace it with uniform business tax on business organizations previously subject to tax under RSA 77-A; and

"Whereas, HB. 674-FN establishes a distinct class of property defined as the business organization's 'tax base' with respect to which the uniform business tax is imposed; and

"Whereas, 'tax base', as defined in HB 674-FN, means taxable income of the business organization reduced by an apportionment factor and increased or decreased, as the case may be, by certain adjustments, all as defined in the bill; and

"Whereas, HB 674-FN would impose a tax at a uniform rate of one percent on 'tax base'; and

"Whereas, 'tax base', as defined in HB 674-FN, includes compensation and benefits paid, less a $25,000 blanket deduction; and

"Whereas, under HB 674-FN corporations, proprietorships and partnerships will be required to pay the uniform business tax on amounts over $25,000 while an individual employed by a corporation, proprietorship or partnership will pay no tax under HB 674-FN; and

"Whereas, the stated purpose of the bill is to spread the burden of taxation more equally among all business organizations; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:

"1. Would establishment of 'tax base' as a class of property, as proposed and defined in HB 674-FN, exceed a reasonable exercise of the General Court's power to classify property for purposes of taxation, under Part II, Article 6 of the New Hampshire Constitution?

"2. Would enactment of HB 674-FN, which imposes a uniform business tax on a business organization's tax base, which is determined by allowing a deduction of $25,000 with no specific compensation deductions, have the effect of impermissibly classifying taxpayers under Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution and as discussed by this Court in *Opinion of the Justices*, 106 N.H. 202 (1965)?

"3. If the answers to questions 1 and 2 are in the negative, would imposition of a tax on 'tax base' at the uniform rate set forth in HB 674-FN offend the requirements for equality and proportionality mandated by Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution?

"That the clerk of the House transmit 7 copies of this resolution to the Justices of the Supreme Court along with an equal number of copies of HB 674-FN."

The following answers were returned:

*To the House of Representatives:* The Justices of the Supreme Court submit the following answers to your questions with respect to House Bill 674. Interested parties were permitted to file memoranda until May 2, 1983; however, none were received.

House Bill 674 would repeal the "business profits tax," RSA chapter 77-A, and replace it with a "uniform business tax." The bill, like House Bill 316, is aimed both at equalizing the tax burden borne by New Hampshire business organizations and at providing additional State revenues.

House Bill 674 would impose a tax of one percent upon what is called the "tax base" of every business organization in this State. "Tax base" is defined as "taxable income," reduced by a method of apportionment, and increased or decreased by certain adjustments, including a $25,000 blanket deduction. *See* House Bill 674, proposed RSA 77-E:1, IV. The bill also provides credits for State franchise, banking and insurance taxes. *See* House Bill 674, proposed RSA 77-E:5. It should be noted that the general statutory scheme and most of the specific deductions, the apportionment formula, and the credits provided in House Bill 674 have been adopted verbatim from RSA chapter 77-A. The most significant difference between the bill and the current taxation scheme is that the bill *disallows* any deductions for compensation and benefits in calculating taxable income. A comparison of the existing scheme under RSA chapter 77-A and that proposed in House Bill 674 reveals how this is accomplished.

The *current* tax is imposed on "taxable business profits," which, as we stated in Part I of this opinion, is essentially "net" taxable business income. "Taxable business profits" is calculated from a starting base called "gross business profits," RSA 77-A:1, IV (Supp. 1981). "Gross business profits" is defined separately for each type of business organization; namely, corporations, partnerships, proprietorships, and trusts and estates. RSA 77-A:1, III(a)–(d) (Supp. 1981 & 1982). The most significant feature of these separate definitions is the differing treatment of compensation paid to corporate officers or executives, and that paid to partners and proprietors.

In calculating "gross business profits," corporations begin with what is shown as "taxable income" on their federal income tax returns. Federal "taxable income" already takes into account deductions for compensation paid to corporate officers. Proprietorships begin with what would be shown as federal "net profit," which does *not* include a deduction for the proprietor's compensation. Partnerships start with their federal "ordinary income," *increased* by the amount paid to partners and items of income or deductions specifically allocated to partners.

In order to equalize the disparity inherent in these definitions of "gross business profits," however, RSA chapter 77-A provides a special deduction for partnerships and proprietorships, in an amount "equal to a fair and reasonable compensation for the personal services of the proprietor or partners . . . ." RSA 77-A:4, IV (Supp. 1981). The justices of this court have previously advised that such a deduction is not only reasonable, but necessary in order to avoid discrimination against certain business organizations "by placing a partner or sole proprietor on a par with the salaried executive . . . ." *Opinion of the Justices*, 110 N.H. at 123, 262 A.2d at 295.

As previously mentioned, House Bill 674 defines the starting base for businesses as being "taxable income," *see* House Bill 674, proposed RSA 77-E:1, IV. The definitions of "taxable income" have been taken almost verbatim from the current scheme's definitions of "gross business profits." *Compare* RSA 77-A:1, III(a)–(d) (Supp. 1981 & 1982) *with* House Bill 674, proposed RSA 77-E:1, III(a)–(d). In other words, corporations would begin with their federal "taxable income" reflecting the prior deduction of executive salaries and compensation, whereas partnerships begin with federal "ordinary income," but are required to add to that figure all compensation paid to partners; proprietorships begin with "net profits."

In contrast to the existing scheme under RSA chapter 77-A, House Bill 674 equalizes the initial disparity by means of an adjustment, which requires *the addition* of all compensation and benefits deducted by the taxpayer in arriving at "federal taxable income." *See* House Bill 674, proposed RSA 77-E:4, II(c). Corporations thus appear to be put on an equal footing with partnerships and proprietorships, through a *uniform disallowance* of deductions for compensation or benefits.

We note in passing that we have construed the terms "taxable income" and *"federal* taxable income," in the section providing for adjustments, as being synonymous. *Compare* House Bill 674, proposed RSA 77-E:4, *with id.* :4, I & II. A contrary interpretation would render the section unconstitutional. Specifically, if use of the term "federal" made the adjustments section applicable solely to corporations, whose federal "taxable income" is used elsewhere in the statute as a term of art, the section would not make the adjustments uniformly available to all business organizations.

We turn now to the first question presented; namely, whether "tax base" is a taxable class of property under part two, article six of the New Hampshire Constitution. We stated in Part I, with respect to House Bill 316's proposed alternate business profits tax, that "alternate business profits," if defined simply as gross business income, would be a constitutionally taxable class of property, and that the constitutional validity of taxing "alternate business profits" as a class of property depended upon the specific adjustments, deductions, and credits used in arriving at it. Insofar as the adjustments to "taxable income" under House Bill 674, proposed RSA 77-E:4, II, equalize the starting bases of all business organizations under the uniform business tax scheme, our inquiry here is no different.

In addition to their role in equalizing the "tax base," the adjustments contained in House Bill 674, proposed RSA 77-E:4, II, appear to be a reasonable means of enlarging the taxable class of property beyond the narrower base existing under the present business prof-

306

its tax. The evident purpose of taxing businesses before compensation and benefits are deducted is to spread the burden of taxation more fairly throughout the State, by including those taxpayers who may currently avoid the business profits tax through distribution of profits in the form of "compensation." The respective adjustments for depreciation deductions by those businesses owning property, and for lease deductions by those businesses renting property, are similarly designed to enable the State to tax business property more broadly than is possible under the current system, due to generous deductions provided by the federal income tax laws.

House Bill 674, proposed RSA 77-E:4, I, provides for adjustments to taxable income in the form of allowable deductions, the most significant of which appears to be the blanket $25,000 deduction. This deduction appears to meet constitutional requirements, as its amount is reasonable and uniform, and it is available to all businesses. We perceive no constitutional infirmities in the other deductions provided, which correspond largely to deductions allowed under RSA chapter 77-A, as they avoid either double taxation or possibly unconstitutional taxation of United States government securities. *See Memphis Bank & Trust Co. v. Garner,* 103 S.Ct. 692 (1983). (State tax scheme under which income from State obligations is exempted from tax base but income from federal obligations is included, is impermissible under 31 U.S.C. § 742 and U.S. Constitution.)

The apportionment provided for in proposed RSA 77-E:3, also a carry-over from the business profits tax, is necessary in order to comply with the due process and commerce clauses of the United States Constitution, *see, e.g., Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 436–37 (1980), and appears to be a reasonable means of allocating business income earned within and without New Hampshire.

Finally, the credits for State franchise, banking, and insurance taxes allowed in House Bill 674, proposed RSA 77-E:5, apply uniformly to all businesses for the purpose of preventing double taxation and merely correspond to credits now provided under RSA chapter 77-A.

For the foregoing reasons, we conclude that "tax base" as defined in House Bill 674 is a taxable class of property under part two, article six of the New Hampshire Constitution. We therefore answer the first question in the negative.

The second question presented is whether imposition of a tax on a business organization's tax base, which is determined after the blanket $25,000 deduction, but without regard to any compensa-

tion and benefits deductions, impermissibly classifies taxpayers under our Constitution. As discussed in Part I, this question requires a determination of whether the *same* class of property is being taxed differently so that taxpayers who ought to be treated equally are in fact being subjected to disparate schemes of taxation and to differing tax burdens. Unlike House Bill 316, which seeks to establish alternate taxation of the *same* class of property, House Bill 674 would establish a uniform percentage tax on the "tax base" of all business organizations. We conclude, therefore, that, to the, extent the formula for calculating "tax base" treats all business organizations in a substantially equivalent manner, House Bill 674 does not impermissibly classify taxpayers under part one, article twelve or part two, article five of the State Constitution.

The references to *Opinion of the Justices*, 106 N.H. 202, 208 A.2d 458 (1965), both in this request for an opinion of the justices and in that with respect to House Bill 316, appear to be based upon a possible misconception of the import of that opinion. The bill at issue there would have taxed business income derived from "personal services"; however, it excluded the income derived from the personal services of employees. As a result, proprietors and other self-employed individuals would have paid a tax on income from their *own* personal services, but income derived from the personal services of *employees* would have been tax-exempt. The justices of this court determined that such a tax was not only unconstitutional because it favored corporations, but also irrational, as the targeted self-employed professional could simply incorporate his business, become an "employee," and thereby avoid payment of the tax. The justices also stated that, just as the businesses of *individuals* could not be unequally burdened, so "a tax imposed on corporations, while allowing individuals engaged in like businesses or vocations to go free, is unconstitutional." *Id.* at 206, 208 A.2d at 461.

In other words, the legislature could not tax a certain *type* of business activity, or even business activities in general, but then exempt certain *forms* of business organizations from payment of the tax. This is an entirely different proposition from the legislature's unquestionable right to classify a "sufficiently distinctive class" of property, for example, petroleum products, and subject all producers of that product to a uniform tax. *Opinion of the Justices*, 117 N.H. 749, 755, 379 A.2d 782, 786 (1977); *Opinion of the Justices*, 114 N.H. 174, 177, 317 A.2d 568, 570 (1974).

In short, the *Opinion of the Justices* in 106 N.H. 202 does not stand for the proposition that a tax on business income constitutionally *must* allow business organizations to deduct compensation and

benefits. Previous opinions of the justices require merely that, *to the extent* a certain deduction or exemption, for example a deduction for compensation paid, *is allowed*, it must be available to *all* business organizations. Thus, if corporations are allowed to deduct executive salaries, partnerships and proprietorships must also be allowed a compensation deduction for the salaries of persons occupying similar positions.

We understand the legislative concern here to be that the proposed tax, while a tax *on business income* in the form of "tax base," might have the practical effect of being a tax on the income of sole proprietors or partners, since the *personal* income of such individuals is essentially the net profit derived from their businesses' income. We are not, however, dealing with *personal* income tax schemes in the proposed bills, which would require us to examine whether certain classes of *individuals* were being exempted from tax payments, or being singled out for disparately burdensome payments.

■ The tax proposals before us relate to business organizations and business incomes. As was earlier stated, "business income may reasonably be classified separately from salaries, wages, and unearned income of individuals." *Opinion of the Justices*, 110 N.H. at 123, 262 A.2d at 295. While it is true that under House Bill 674, for example, the self-employed plumber whose business had a taxable income in excess of $25,000 would be subject to a tax, whereas the salaried plumber would not, it is equally apparent that the latter individual works for an entity that *is* being taxed; namely, the business which employs him.

■ In summary, we believe that taxation of a business organization's "tax base" determined after a uniform $25,000 deduction, but without any compensation deductions, does not impermissibly classify taxpayers in violation of the New Hampshire Constitution. Accordingly, we answer question two in the negative.

■ The final question presented is whether imposition of a uniform percentage tax on a business organization's "tax base" violates the requirements of equality and proportionality under part one, article twelve and part two, article five of our Constitution. Unlike the $250 minimum business profits tax struck down in *Johnson & Porter Realty Co. v. Comm'r of Rev. Admin.*, the uniform business tax would not "result[] in a tax at a graduated rate," since it is not assessed "without reference to . . . gross income . . . ." 122 N.H. at 698, 448 A.2d at 436. For this reason, and in light of our responses to questions one and two, we believe that imposition of a percentage

uniform business tax as proposed in House Bill 674 would satisfy the equality and proportionality mandates of the State Constitution. We answer question three in the negative.

JOHN W. KING
MAURICE P. BOIS
CHARLES G. DOUGLAS, III
DAVID A. BROCK
WILLIAM F. BATCHELDER

*Sulloway, Hollis & Soden,* by Martin L. Gross, filed a memorandum on behalf of the Fiscal Policy Committee of the New Hampshire Business and Industry Association in support of the constitutionality of House Bill 316.