Request of the House of Representatives
No. 90-051

## OPINION OF THE JUSTICES

March 9, 1990

The following Resolution No. 54, requesting an opinion of the justices, by the House of Representatives was adopted on January 25, 1990, and filed with the Supreme Court on January 26, 1990:

"Whereas, there is pending in the House, House Bill 412-FN-A, as amended, 'An Act to provide tax credits for employees under the business profits tax'; and

"Whereas, RSA 77-A:1, XXI and XXII as proposed in HB 412-FN-A as amended add definitions of 'compensated service' and 'New Hampshire employee', respectively, for business profits tax purposes; and

"Whereas, RSA 77-A:4, XV as proposed in HB 412-FN-A as amended would require adding to gross business profits the amount of all deductions taken by a business organization for wages, salaries, or other compensation for personal services actually rendered by employees; and

"Whereas, RSA 77-A:5, VI as proposed in HB 412-FN-A as amended would allow the sum of the following credits against the tax due under the business profits tax:

(a) $2,800 for each New Hampshire employee rendering 1,800 or more hours of compensated service to the business organization during the period for which a return must be filed under RSA 77-A.

(b) A prorata share of the credit provided in subparagraph (a), based upon the number of hours of compensated service, for each New Hampshire employee rendering less than 1,800 such hours to the business organization during the period for which a return must be filed.

(c) $2,800 for each proprietor actually devoting 1,800 or more hours to the operation of the enterprise.

(d) A prorata share of the credit provided in subparagraph (c), based upon the number of hours actually devoted to the operation of the enterprise, for each proprietor devoting less than 1,800 such hours during the period for which a return must be filed; and

"Whereas, the unnumbered concluding paragraph of RSA 77-A:5 as proposed in HB 412-FN-A as amended would allow the unused portion of the credit to be carried forward for 5 years following the year in which the credit was generated, with the total amount of any such credit carried forward not to exceed $20,000 per year or $100,000 in total; and

"Whereas, HB 412-FN-A as amended repeals the deduction under RSA 77-A:4, III for fair and reasonable compensation for personal services; and

"Whereas, the stated purposes of the bill are to encourage employment in this state and to spread the burden of taxation more equally among the business organizations already subject to the business profits tax; and

"Whereas, a question has arisen as to the constitutionality of the provisions of said bill as amended; and

"Whereas, it is important that the question of the constitutionality of said provisions should be settled in advance of its enactment; now, therefore, be it

"Resolved by the House: "That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Would enactment of HB 412-FN-A, which amends the business profits tax by effectively repealing with respect to all business organizations the deduction for wages, salaries, or other compensation for personal services of employees, partners or proprietors, have the effect of impermissibly classifying taxpayers under Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution?

2. If the answer to question 1 is in the negative, would imposition of the business profits tax on taxable business profits calculated without the benefit of a deduction for compensation for personal services of employees, partners or proprietors, violate the requirements for equality and proportionality mandated by Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution?

3. Would the provision of HB 412-FN-A that allows a credit against the business profits tax equal to $2,800 for each 'New Hampshire employee', as that term is defined by HB 412-FN-A, or proprietor rendering 1,800 or more hours of compensated service to the business organization during the tax year, prorated in the case of New Hampshire employees or proprietors rendering less than 1,800 hours of service during the tax year, violate the provisions of Part I, Article 12 and Part II, Article 5 of the New Hampshire Constitution because it effectively creates a discriminatory or disproportionate system of taxation, or impermissibly classifies taxpayers for purposes of taxation?

4. Would allowance of the credit as so proposed offend the constitutional requirements that such an exemption from tax be reasonable and uniform, as stated in *Opinion of the Justices*, 131 N.H. 640, 642 (1989)?

5. If the answers to questions 3 and 4 are in the negative, would the carryover provisions of HB 412-FN-A, which allow the unused portion of the credit to be carried forward for 5 years following the year in which the credit was generated, but which limit the total amount of the carryover to $20,000 per year or $100,000 in total, violate any provision of the New Hampshire Constitution?

6. In all respects other than those to which the preceding questions relate, is HB 412-FN-A constitutional?

"That the clerk of the house of representatives transmit copies of this resolution and HB 412-FN-A, as amended, to the Justices of the New Hampshire Supreme Court."

The following response is respectfully returned.

*To the Honorable House of Representatives:*

The undersigned Justices of the Supreme Court now submit the following replies to your questions of January 25, 1990. Following our receipt of your resolution on January 26, 1990, we invited interested parties to file memoranda with the court until February 13, 1990.

The New Hampshire Business Profits Tax, *see* RSA 77-A:2 (Supp. 1989), is an eight percent tax on the "taxable business profits" of a "business organization" (*i.e.*, any enterprise organized for gain or profit, whether a corporation, partnership or proprietorship, RSA 77-A:1, I (Supp. 1989)). "Taxable business profits" are "gross business profits," RSA 77-A:1, IV (Supp. 1989) (defined differently for each type of business organization, RSA 77-A:1, III (Supp. 1989)), adjusted by certain additions and deductions, RSA 77-A:1, IV, :4 (Supp. 1989), and subject to apportionment if derived from activities both within and without New Hampshire, RSA 77-A:3 (Supp. 1989).

The calculation of a corporation's "taxable business profits" begins with its taxable income as calculated under the United States Internal Revenue Code, RSA 77-A:1, III(a) & (b), IV (Supp. 1989); N.H. ADMIN. RULES, Rev 301.05 (S-corporations), and thus excludes compensation paid to its employees, *see Opinion of the Justices*, 123 N.H. 296, 304, 460 A.2d 93, 99 (1983). The "taxable business profits" of partnerships and proprietorships likewise exclude their expenses for employee compensation, RSA 77-A:1, III(c) & (d), IV (Supp. 1989), as well as "reasonable compensation for ... personal services" of the active proprietors and partners themselves, RSA 77-A:4, III (Supp. 1989).

The "reasonable compensation" deduction was designed to place partnerships and proprietorships on par with corporations, which, in effect, also enjoy deductions for compensation paid to the individuals who run the enterprises. *See Opinion of the Justices*, 123 N.H. at 304, 460 A.2d at 99. Partnerships and proprietorships, like corporations, thus are expected to pay taxes on net income; that is, on their business income reduced by, *inter alia*, the amounts of compensation paid to their employees and to those individuals who are in charge of operating the enterprises.

House Bill 412-FN-A would amend the business profits tax provisions by eliminating the deductions for compensation currently taken by business organizations in calculating their taxable business profits. In place of those deductions, HB 412-FN-A would provide a $2,800 tax credit for each employee or proprietor rendering 1,800 or more hours of service (and a prorated credit for those rendering fewer than 1,800 hours), although, apparently due to inadvertence, no credits would be available for the services of partners. Any unused credits, within certain limits, could be carried forward for five years following the initial year in which the credits were calculated.

 Your first question asks whether repeal of those provisions that now effectively provide the deduction for compensation expenses would result in impermissibly classifying taxpayers contrary to the requirements of part I, article 12 of the State Constitution, and part II, article 5 (by which we assume you mean article 6). *But see Opinion of the Justices*, 131 N.H. 640, 642, 557 A.2d 273, 275 (1989). Subject to a qualification to be explained, we answer that the repeal, considered in isolation from the further provisions for tax credits, would not have that unconstitutional result. Distinctions in tax treatment must rest upon reasonable classifications of property, not upon classifications of taxpayers owning a common class of property. *Opinion of the Justices*, 115 N.H. 306, 308–09, 339 A.2d 450, 452 (1975). Business income is a category of property reasonably recognizable as a distinct class under the constitutional provisions in question, *see Opinion of the Justices*, 123 N.H. 296, 301–02, 460 A.2d 93, 97 (1983), and may be recognized for tax purposes either in its gross amount or net of related expenses, *see Opinion of the Justices*, 95 N.H. 537, 539, 64 A.2d 320, 321 (1949). In an earlier opinion, we considered a legislative proposal to define the class of taxable business income without deduction for expenses of compensation and gave our opinion that this would be a reasonable method of enlarging the class of taxable property in question, *Opinion of the Justices*, 123

N.H. at 305-06, 460 A.2d at 99-100, and we affirmed that position less than a year ago in *Opinion of the Justices*, 131 N.H. 640, 643, 557 A.2d 273, 275 (1989). Subject to a caveat set out below, we are of the same opinion today.

■ Subject to the same caveat, we also return a negative answer to your second question, whether the imposition of a tax on business "profits" as so calculated would violate the equality and proportionality requirement of part I, article 12 and part II, article 5. Because the provisions of the bill eliminating the compensation deductions, considered alone, would operate with identical effect on all business entities, whether corporate or individual, the bill would satisfy the requirement that all such entities be treated with substantial equality, *see Opinion of the Justices*, 123 N.H. at 302, 460 A.2d at 97, in satisfaction of the requirements of proportional and equal taxation imposed by part II, article 5 of the Constitution, *see Opinion of the Justices*, 131 N.H. at 642, 557 A.2d at 275; *Opinion of the Justices*, 101 N.H. 549, 554, 137 A.2d 726, 730 (1958).

The caveat to which we have referred is prompted by an argument contained in the memorandum submitted on behalf of the New Hampshire Medical Society. The Society's counsel takes the position that the provision of HB 412-FN-A here under consideration should be analyzed as taxing "payrolls" of "enterprises." The memo states that some enterprises providing medical services are not business organizations under RSA 77-A:1, I (Supp. 1989), which excludes from the class of such organizations those that are "exempt from income taxation under the United States Internal Revenue Code as defined in RSA 77-A:1, XX." As a result, such organizations are also exempt from taxation under RSA 77-A:2 (Supp. 1989), which subjects only a "business organization" to a tax on its profits. Because HB 412-FN-A would not modify the definition of "business organization," the Society's counsel argues that the bill would tax payrolls of medical services enterprises organized for profit, but not those of enterprises whose non-profit status is recognized under the Internal Revenue Code, with the result that the bill would impermissibly classify entities with otherwise identical "payroll" expenses, depending on their for-profit or non-profit status.

We neither accept nor dismiss this argument in its entirety. To the extent that it rests on an identification of the relevant class of property as "payrolls," it runs counter to our consistent approval of legislative recognition of business income as a taxable class of property, the for-profit characteristic of which is an element of the statutory definition setting its limits. Insofar, then, as the argument

predicates disparate tax treatment simply by redefining the class of taxable property (*i.e.*, as "payrolls" of all "enterprises") in such a way as to straddle the taxable line, it must be rejected as resting on a legal premise inconsistent with existing case law.

The argument may nonetheless raise an issue deserving legislative consideration, for it suggests that taxable medical service providers are not sufficiently distinguishable from the medical service enterprises granted exempt status for federal tax purposes to justify exempting the latter from taxation under RSA chapter 77-A. If this is so, their exemption from State taxation would be an impermissible classification of potentially taxable entities. We, of course, have no way of discovering or weighing the facts on which such a claim might rest, since requests for our advisory opinions come to us with no record beyond the assumptions stated in the requests themselves. Nor, for the same reason, are we in any position to say whether RSA 77-A:1, XX (Supp. 1989), defining "United States Internal Revenue Code" in a certain manner "unless and until ... the application of one of its provisions is held to violate the New Hampshire Constitution," would be adequate to authorize the commissioner of revenue administration to take action sufficient to save the constitutionality of the statute in the event of a challenge resting on the unconstitutional recognition of exempt status.

■ Questions three and four inquire whether the provisions of HB 412-FN-A for tax credits would vi olate the New Hampshire Constitution by impermissibly classifying taxpayers, N.H. CONST. pt. II, art. 6, or by creating a discriminatory, unreasonable, or disproportionate system of taxation, N.H. CONST. pt. I, art. 12; pt. II, art. 6. We answer in the affirmative.

■ While "we recognize that the legislature has broad power to create exemptions, such as deductions, adjustments and credits," from taxable income under the business profits tax, such exemptions must be reasonable and uniform. *Opinion of the Justices*, 131 N.H. at 642, 557 A.2d at 275. The proposed tax credit scheme would violate this standard by providing disparate numbers of credits to business organizations without regard to income or aggregate reasonable compensation expenses, *id.* at 643, 557 A.2d at 275. The result would be differing tax rates and the same constitutional infirmity entailed by the recently proposed amendment to the business profits tax provisions that would have placed a $100,000 cap on any deduction for reasonable compensation of one person, *see id.*

To illustrate the unequal tax treatment inherent in the proposed credit scheme, the memorandum submitted on behalf of the Business and Industry Association of New Hampshire and the New Hampshire Society of Certified Public Accountants posits the potential business profits tax liability under HB 412-FN-A of three business organizations, each with a gross income of $150,000 and aggregate compensation expenses of $150,000 for employees each working 1,800 or more hours each tax year. The first business has only one employee, who earns $150,000 annually; the second has four employees, three of whom earn $25,000 and one of whom earns $75,000, and the third has ten employees, each earning $15,000. Without calculating credits, the business profits tax for each business would be the same, 8% of $150,000 or $12,000. Under the proposed credit scheme, however, the first business would receive a $2,800 tax credit for its single employee, and would thus pay a business profits tax of $9,200 at an effective rate of 6.13% on gross business profits. The second business would receive $11,200 in credits ($2,800 for each employee), and pay $800 in tax at an effective rate of .53%, while the third business would receive $28,000 in credits, an amount far exceeding its pre-credit tax of $12,000, and thus would enjoy a 0% tax rate and pay no tax at all. Thus, the amount of business profits tax paid by each business organization would depend on the number of persons it employed and the compensation paid those employees, attributes unrelated to the amount of income each organization produced. This scheme would therefore impose different rates of taxation on a single category of taxable property in violation of the New Hampshire Constitution. *See Opinion of the Justices,* 131 N.H. at 643–44, 557 A.2d at 275–76.

▮ In addition to the unconstitutionality inherent in the proposed criteria for awarding credits, the absence of a provision in the bill to allow credits for the services of partners would itself obviously violate the constitutional principles we have just articulated. Any credits against business profits taxes must be equally available to every type of business organization paying such taxes, including partnerships. *See id.* at 643, 557 A.2d at 275. The absence of partner credits from a scheme granting similar credits to proprietors and to corporations would create disparate tax rates on like categories of taxable business property in violation of the constitutional requirements of uniformity and equality of treatment in taxation. *See id.*

In light of our reply to questions three and four, we need not determine whether the carryover provisions of HB 412-FN-A would violate the New Hampshire Constitution. We respectfully decline to answer question six because of its generality. *See id.* at 644, 557 A.2d at 276.

March 9, 1990

WILLIAM F. BATCHELDER
DAVID H. SOUTER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III

## OPINION OF CHIEF JUSTICE BROCK

I join with the other members of the court in the opinion that the proposed tax credit scheme would violate the New Hampshire Constitution. However, I respectfully dissent from that portion of the opinion of the other justices which is offered in response to the second question.

The business profits tax, as enacted, constitutes a charge against what is traditionally known as profit, that net income which remains after the ordinary expenses of operation have been paid, and which represents the extent to which the principals have benefited from their investment. Under the State Constitution, the classification of businesses subject to the tax must include all forms of organization, not just corporations. *See Opinion of the Justices,* 111 N.H. 206, 209, 278 A.2d 348, 350 (1971). But, while the profit of corporations is readily recognizable through federal tax reporting, partnerships and sole proprietorships do not ordinarily isolate an identifiable profit amount from the gross income of their participating principals.

To make the tax equitable among the different organizational forms, the current statute permits sole proprietors and partners to deduct from their income an amount of "reasonable compensation" equivalent to the value of their contribution to the business and, in effect, presumes that the remainder is taxable profit. Because discretion is allowed in calculating "reasonable compensation," the amounts submitted are at best inconsistent and frequently approximate the total amount of income, thereby producing little or no tax. Thus, the difficulty of applying a "profits" tax to organizations that do not have a clearly recognizable profit becomes apparent.

Amendments have been suggested that would more sharply define profit. In one recent initiative, it was proposed that any compensation above $100,000 paid to an individual employee, partner or sole proprietor be considered taxable profit. In opining on this scheme, this court stated that such a classification "would offend the constitutional requirements for equality, proportionality, and reasonableness and would impermissibly classify taxpayers in violation of our State Constitution." *Opinion of the Justices*, 131 N.H. 640, 644, 557 A.2d 273, 276 (1989).

Before us is another such proposal which is comprised of two essential components. First, taxable profit is expanded to include any compensation paid to employees, partners or sole proprietors. Second, after the tax is computed, a tax credit of up to $2,800, an amount equivalent to $35,000 taxed at eight percent, is permitted for each person employed by the taxable organization.

In its resolution, the House of Representatives has asked us specific questions in regard to the components of the revised tax plan. The court responds unanimously in the opinion that the second component, the tax credit scheme, is unconstitutional because the resulting tax would depend on attributes unrelated to the object of the tax, the amount of income each taxable organization produces.

The other justices have opined that the first component of the proposal satisfies constitutional requirements. I disagree. It is my opinion that the imposition of the business profits tax on the enlarged class of property, which includes employee compensation, would also violate the proportional and equal taxation requirements of the State Constitution.

I concur with the other justices in response to the first question. The classification of property for purposes of taxation, in the manner proposed by the legislature, by uniformly disallowing the deduction for employee compensation, is not in itself unconstitutional. *See Opinion of the Justices*, 123 N.H. 296, 306, 460 A.2d 93, 100 (1983). Wide latitude is afforded to the legislature in selectively classifying property for the purpose of taxation. *Opinion of the Justices*, 115 N.H. 306, 308, 339 A.2d 450, 451 (1975).

It is in response to the second question that I part company with the other members of the court. As I understand this question, we are asked for our opinion as to whether application of the business profits tax to the revised definition of taxable profits is unconstitutional. Because tax credits are allowed only after the amount of tax has been computed, the tax credit scheme is not considered in formulating this response.

The constitutionality of a statute must be determined by examining both its real purpose and its actual effects. *Id.* at 309, 339 A.2d at 452. The business profits tax is assessed only against businesses organized for gain or profit, RSA 77-A:1, I (Supp. 1989), and has been interpreted as taxing the realization of gain or profit, *Shangri-La, Inc. v. State,* 113 N.H. 440, 443, 309 A.2d 285, 287 (1973). The proposed amendments do not purport to alter this rationale. Instead, the changes are intended "to spread the burden of taxation more equally among the business organizations already subject to the business profits tax ...."

When the business profits tax is applied to the new definition of profit, some unusual effects are noted. The focus of the tax, while still involving a calculated net income, is moved away from the added value created by investment toward the expenses incurred in conducting operations. The tax would no longer apply strictly to the benefits of ownership; the amendment would require businesses to pay a premium to the extent that labor and personal services are required to produce those benefits. Businesses that are more labor intensive will bear a greater burden of taxation, while those which are more automated or require less human intervention will pay a lesser share.

In addition, it is unlikely that the amount of tax will bear any relationship to our traditional understanding of gain or profitability. For example, we can view the circumstances of two corporations, both having owners' equity of $500,000, gross income of $1,000,000, and net income after expenses of $100,000. One of the corporations pays $600,000 in employee compensation, while the other, perhaps more automated, pays only $300,000. In applying the amended business profits tax at eight percent, one corporation would owe the State $56,000 (($100,000 + $600,000) x .08) and the other one, $32,000 (($100,000 + $300,000) x .08). The amount of the tax bears no relationship to the value of the corporation, the total income generated, or the benefits produced.

The additional effect such a proposal could have on employment need not be addressed; that question is not before the court and is ultimately for the legislature to evaluate. However, I note my difficulty in reconciling the results of such a tax with the other stated objective of the proposed amendment, which is to encourage employment in this State.

Of course, the legislature has already recognized these effects and attempts to compensate for them by superimposing the tax credit scheme. However, tax credits are allowed only after the tax has

been computed and, as stated by the other members of the court, the tax credit portion of the amendment is clearly unconstitutional.

In my opinion, the application of the business profits tax to the enlarged classification of taxable profits is itself unconstitutional. While intending to spread the burden of taxation more equally among business organizations subject to the tax, the proposed amendments would actually create disparities based upon the amount of compensation paid to persons employed by or participating in the business. "A tax must be in proportion to the actual value of the property subject to tax, and it must operate in a reasonable manner." *Johnson & Porter Realty Co. v. Comm'r of Rev. Admin.*, 122 N.H. 696, 698, 448 A.2d 435, 436 (1982). I can find no just reason why, in applying the business profits tax, some businesses should pay tax at a higher rate simply because the type of business may require greater expenditure in personnel charges. Like the tax credit scheme, the imposition of tax based upon attributes unrelated to the object of the tax results in different rates of taxation. It is my opinion that the proposed amendment lacks uniformity, is unreasonable, and violates the requirements of proportional and equal taxation imposed by part I, article 12 and part II, article 5 of our State Constitution. Consequently, my response to the second question would be in the affirmative.

March 9, 1990

DAVID A. BROCK

*John P. Arnold*, attorney general (*David S. Peck* and *Peter T. Foley*, senior assistant attorneys general, on the memorandum), filed a memorandum in support of negative answers to questions 1–4.

*The Ways and Means Committee of the House of Representatives*, by its Chair, Donna Sytek, filed a memorandum in support of negative answers to the questions presented.

*Sulloway Hollis & Soden*, of Concord (*Martin L. Gross*), filed a memorandum on behalf of the New Hampshire Medical Society in support of affirmative answers to questions 1, 3 and 4.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*David E. Barradale* and *Kevin M. Leach*), filed a memorandum in support of affirmative answers to questions 1–4.

*Sari Ann Strasburg* and *Douglas R. Chamberlain*, of Manchester, filed a memorandum in support of affirmative answers to the questions presented.

*Mark Rufo*, of Nashua, filed a memorandum in support of affirmative answers to questions 3 and 4.