Rockingham
No. 2008-268

WESLEY C. PIKE, JR.

v.

ANU R. MULLIKIN & a.

Argued: October 8, 2008
Opinion Issued: January 14, 2009

*Francis G. Holland*, of Nashua, by brief and orally, for the plaintiff.

*Nelson, Kinder, Mosseau & Saturley, P.C.*, of Manchester (*William C. Saturley* on the brief and orally), for the defendants.

BRODERICK, C.J. The plaintiff, Wesley C. Pike, Jr., appeals two orders of the Superior Court (*McHugh*, J.). The first order denied summary judgment on the issue of whether his antenuptial agreement was enforceable. The second granted summary judgment to the defendants, Anu R. Mullikin and Devine, Millimet & Branch, P.A., and dismissed the plaintiff's claim for legal malpractice. We affirm in part, reverse in part and remand.

The record supports the following facts. In November 1998, Pike married Mary Casey Bekaert. Eleven days prior to their wedding, Pike and Bekaert executed an antenuptial agreement prepared by Mullikin, an attorney at the law firm of Devine, Millimet & Branch, P.A. (Devine Millimet). The agreement was signed at Pike's office, with Mullikin present as Pike's counsel. Bekaert had no counsel present, but had retained a Massachusetts attorney, Richard Glidden, to advise her with regard to the agreement. Glidden had represented Pike in real estate transactions that occurred approximately two months earlier. Three days after the agreement was signed, Glidden signed Exhibit C of the agreement, entitled "Certification of Attorney." Exhibit C provided that Bekaert had voluntarily executed the agreement, had consulted with Glidden before signing it, and that he had advised her of her rights in connection with it.

Pike had three children from an earlier marriage. His purpose in requesting the antenuptial agreement was to protect his family business, New Hampshire Northeast Credit Services, Inc., and to insure that his assets would be preserved for his children. Under the terms of the agreement, Bekaert was not entitled to any assets held in Pike's name or any alimony in the event they divorced.

After six years of marriage, Bekaert filed for divorce and contested the validity of the antenuptial agreement. The Family Division at Portsmouth (*Fishman*, M.; *DeVries*, J.) awarded Bekaert $3,500 per month in alimony under a partial temporary stipulation and scheduled a hearing on the validity of the contested agreement. The division "STRONGLY advised [the parties] to attend mediation." Because the family division unequivocally encouraged mediation and his new attorney raised concerns with him about the enforceability of the agreement, Pike feared it would not be upheld, and that his assets of $4,200,000 might be divided equally with Bekaert. Pike and Bekaert decided to meet without counsel and negotiated a permanent stipulation under which she would receive approximately $718,000. In signing the permanent stipulation, both parties certified to the family division that they were "satisfied that it [was] a fair and equitable resolution of [the] divorce." The permanent stipulation was incorporated into the divorce decree.

Pike then brought this malpractice action, alleging that Mullikin and her employer, Devine Millimet, were negligent in the drafting, preparation and execution of the antenuptial agreement. He moved for summary judgment, claiming that the agreement was legally unenforceable because Bekaert did not have the benefit of independent counsel to review the agreement prior to its execution. The superior court denied the motion, finding genuine issues of material fact as to whether or not Glidden was independent and whether he gave appropriate advice to Bekaert before she signed the agreement.

Mullikin and Devine Millimet also moved for summary judgment, arguing that: (1) judicial estoppel barred Pike from bringing his malpractice action because it was based upon a claim that the antenuptial agreement was legally flawed, a legal position inconsistent with the permanent stipulation he agreed to in his divorce; (2) fairness and public policy favoring settlements precluded Pike from bringing a malpractice claim because he willingly and satisfactorily settled his divorce dispute; and (3) since Pike failed to litigate the validity of the antenuptial agreement in the family division, he cannot prove causation. The trial court granted the defendants' motion and dismissed the suit. This appeal followed.

In reviewing the trial court's summary judgment ruling, we consider the affidavits and other evidence and all inferences properly drawn therefrom

in the light most favorable to the non-moving party. *Cohoon v. IDM Software*, 153 N.H. 1, 4 (2005). If our review of the evidence fails to reveal any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Orr v. Goodwin*, 157 N.H. 511, 514 (2008). However, we review the trial court's application of the law to the facts *de novo. Id.*

Pike first argues that the trial court erred in holding that the doctrine of judicial estoppel barred his legal malpractice action. We agree.

■■ The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case using one argument and then relying upon a contradictory argument to prevail in another phase. *In the Matter of Carr & Edmunds*, 156 N.H. 498, 502 (2007). The general function of judicial estoppel is to prevent "abuse of the judicial process, resulting in an affront to the integrity of the courts." 31 C.J.S. *Estoppel and Waiver* § 188 (2008); *see also New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). While the circumstances under which judicial estoppel may be invoked vary, three factors typically inform the doctrine's application: (1) whether the party's later position is clearly inconsistent with the party's earlier position; (2) whether the earlier position was accepted by the court; and (3) whether the party seeking to assert a later inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. at 750-51; *Carr & Edmunds*, 156 N.H. at 502.

■ The instant case concerns the first factor; namely, whether Pike's current position that the antenuptial agreement is unenforceable and that Mullikin committed malpractice is clearly inconsistent with his earlier agreement to resolve his divorce by stipulation in which he expressly acknowledged that the settlement was "a fair and equitable resolution." *See New Hampshire v. Maine*, 532 U.S. at 750-51; *Carr & Edmunds*, 156 N.H. at 502. We conclude that it is not.

In the divorce proceeding, Pike and Bekaert sought to end their marriage. Upon advice from his counsel that the antenuptial agreement was legally flawed, Pike elected to meet with Bekaert to negotiate a divorce settlement rather than bear the risk and anticipated costs, both financial and personal, of litigating the agreement's validity in the family division. The record supports that Pike pursued this strategy because he believed that if he did not settle, there was a significant risk that the trial court would award Bekaert half of all assets titled in his name. *See* RSA 458:16-a, II (2004) (establishing presumption that equal division is an equitable division of property in a divorce proceeding).

During the divorce proceeding, Pike never asserted any claims or took any position with respect to the validity of the antenuptial agreement or the adequacy of the legal services he received in connection with its drafting. However, the record supports that his concern over its validity resulted in a negotiated permanent stipulation. His acknowledgement that the stipulation was "fair and equitable" is not clearly inconsistent with his claim that the defendants committed malpractice. Pike contends that because he had concerns over the validity of the antenuptial agreement, he settled with Bekaert to mitigate potential losses that would likely have occurred if the antenuptial agreement were struck down. Under these circumstances, it was not unreasonable for Pike to agree that the stipulation was "fair and equitable." In his subsequent malpractice action, he claimed that Mullikin breached a duty she owed to him in drafting and executing the agreement, and that her breach caused him harm. These two positions are not "clearly inconsistent," *see Carr & Edmunds*, 156 N.H. at 502, and we find nothing in the record which indicates that permitting Pike's legal malpractice action to go forward would entail an abuse of the judicial process resulting in an affront to the integrity of the courts. *See New Hampshire v. Maine*, 532 U.S. at 749-50. Because we find no contradiction in the positions taken, we do not consider the remaining factors which inform the application of judicial estoppel. *See Porter v. City of Manchester*, 155 N.H. 149, 157 (2007).

Pike further argues that the trial court erred in ruling that fairness and public policy favoring settlements precluded him from bringing a malpractice claim following his settlement of the divorce. We agree.

To refute Pike's argument, Mullikin points to a New Jersey Supreme Court case which held on public policy grounds that "knowing and voluntary acceptance of a [divorce] settlement that [the claimant] stated was a fair compromise bars her from proceeding with her malpractice claim." *Puder v. Buechel*, 874 A.2d 534, 543 (N.J. 2005). However, we find *Puder* inapplicable here because the circumstances in that case differ from those of the present case; and, in any event, *Puder* is not binding authority upon us.

In *Puder*, the wife's attorney orally negotiated a divorce settlement agreement with the husband. Subsequently, the wife consulted a second attorney who told her the settlement was inadequate. *Id.* at 536. The wife then refused to adhere to the terms of the settlement agreement and sued her first attorney for legal malpractice. The husband moved to enforce the agreement, but before the court reached a verdict, the couple agreed to settle the divorce for a different amount. The wife then testified that she entered into the second agreement voluntarily, and that she believed the second agreement was fair and reasonable. *Id.* at 537. In dismissing the

wife's legal malpractice claim, the New Jersey Supreme Court wrote: "It would contravene principles of fairness and our policy in favor of encouraging conclusive settlements . . . to allow Mrs. Buechel to now pursue her attorney for greater monetary gain." *Id.* at 540.

In *Puder*, the wife's malpractice claim arose directly out of her first attorney's acts or omissions in attempting to settle her divorce. Because she then hired a second attorney and reached a new, acceptable settlement, she could not proceed with her malpractice claim concerning the first settlement. Doing so, the court ruled, would undermine the second and final settlement and the court's resolution of the divorce. In contrast, here Pike claims his first attorney was negligent in drafting and executing his antenuptial agreement. He does not now seek to undermine final resolution of his divorce or to pursue his attorney for greater monetary gain; he seeks only to put himself in the place in which he expected he would be if the terms of the antenuptial agreement had been enforced by the court. Pike bears the burden of proof on each element of his malpractice claim, but his decision to settle with Bekaert rather than to litigate the validity of the agreement should not, by itself, bar him from the opportunity to do so.

■ Next, Pike argues that the trial court erred in granting summary judgment on the defendants' argument that since he failed to litigate the validity of the antenuptial agreement in the family division, he cannot prove causation. We agree.

To survive a motion for summary judgment on his malpractice claim, Pike must show that there was a genuine issue of material fact with respect to whether Mullikin's alleged negligence was the cause of harm to him. *See Orr*, 157 N.H. at 514. This is not equivalent to establishing that the agreement itself was previously determined invalid by a court. The validity of the agreement can be determined in the trial court as part of this proceeding.

■ Both the trial court's order and Mullikin's brief correctly cite to *McIntire v. Lee* for the proposition that "[a] plaintiff who alleges that an attorney's negligence caused the loss of a legal action or a legal defense can succeed only by proving that the action or defense would have been successful but for the attorney's misconduct." *McIntire v. Lee*, 149 N.H. 160, 165 (2003) (quotation omitted). Applied to this case, Pike would have to prove that Mullikin was negligent, that her negligence caused him to lose the protection of the antenuptial agreement, and that but for Mullikin's negligence, the court would have upheld the terms of the agreement and Pike would not have agreed to the asset division with Bekaert. However, Mullikin and the trial court fail to recognize that *McIntire* does not prevent the present case from surviving a motion for summary judgment as long as

a genuine issue of material fact exists. While *McIntire* establishes what a malpractice claimant must prove in order to carry his burden with respect to causation, it does not require that such proof must have been satisfied prior to bringing the claim itself.

Finally, Pike argues the trial court erred in denying his motion for summary judgment on the issue of whether his antenuptial agreement was enforceable. For the reasons provided in the trial court's order, we disagree.

In viewing the evidence and all inferences properly drawn therefrom in the light most favorable to the non-moving party, we conclude there are genuine issues of material fact with regard to the validity of Pike's antenuptial agreement and the elements of his legal malpractice claim. Accordingly, we affirm the trial court's order denying Pike's motion for summary judgment, reverse the trial court's order granting the defendants' motion for summary judgment and dismissing Pike's malpractice claim, and remand for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.