NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-035


DAVID P. EBY <u>&</u> <u>a</u>.

v.

THE STATE OF NEW HAMPSHIRE

Argued: November 14, 2013
Opinion Issued: June 13, 2014


<u>Devine, Millimet & Branch, PA</u>, of Manchester (<u>Thomas Quarles, Jr.</u> and <u>Joshua M. Wyatt</u> on the brief, and <u>Mr. Wyatt</u> orally), for the petitioners.


<u>Joseph A. Foster</u>, attorney general (<u>Laura E. B. Lombardi</u>, assistant attorney general, on the brief and orally), for the State.


LYNN, J. The petitioners, David P. Eby and Leonard Willey, appeal orders of the Superior Court (<u>McNamara</u>, J.): (1) granting summary judgment in favor of the State; (2) denying the petitioners' motions for summary judgment; and (3) dismissing the petitioners' remaining claims in their putative class action challenge to the constitutionality of the state's tax on gambling winnings, RSA 77:38-:50 (Supp. 2009) (amended 2010; repealed 2011). We affirm.

I

Most of the relevant facts are not in dispute. Effective July 1, 2009, the Legislature imposed a ten percent tax on gambling winnings (Gambling Winnings Tax). Laws 2009, 144:249 (codified at RSA 77:38-:50 (Supp. 2009) (repealed 2011)). The legislation defined "gambling winnings" as "winnings from lotteries and games of chance including, but not limited to bingo, slot machines, keno, poker tournaments, and any other gambling winnings subject to federal income tax withholding." RSA 77:38, III (Supp. 2010) (repealed 2011). The tax applied to gambling winnings of New Hampshire residents "from anywhere derived," and those of nonresidents "derived from New Hampshire entities." RSA 77:39, I (Supp. 2010) (repealed 2011).

The Gambling Winnings Tax was repealed effective May 23, 2011. Laws 2011, ch. 47. The repeal was not retroactive, meaning that the tax was assessed on gambling winnings between July 1, 2009, and May 22, 2011. See Laws 2011, 47:3, :4.

Willey is a New Hampshire resident who, for the three years preceding the filing of this action, derived almost all of his earned income from gambling. For the 2009 tax year, he owed no federal income tax because his gambling losses exceeded his winnings. Under the Gambling Winnings Tax, he reported gambling winnings of $184,700 for that part of 2009 during which the tax was in effect and paid $18,470 in tax under the statute. All of his winnings during this period were from out-of-state casinos.

Eby was not an original party to this action, but was added as a substitute party later in the case. He is a New Hampshire resident who, in May 2011, purchased a scratch ticket offered by the New Hampshire Lottery Commission. Eby won ten dollars on the ticket, and was required to pay one dollar under the Gambling Winnings Tax as a result.

This class action was filed on May 20, 2010, by putative class representatives Dean T. Leighton and Leighton Family Enterprises, LLC (the Leighton Petitioners),[1] and Willey. The petitioners sought a declaratory judgment that the Gambling Winnings Tax was illegal and unconstitutional on its face, as applied to pre-enactment lottery winners receiving their winnings through annuities, and as applied to professional gamblers, as well as a refund of all such taxes collected or withheld.

---

[1] Leighton is a New Hampshire resident who won a Powerball jackpot on March 20, 1996, receiving his winnings via a twenty-year annuity. In 2000, he assigned his rights to receive the remainder of the annuity payments to Leighton Family Enterprises, LLC. In March 2010, the New Hampshire Lottery Commission withheld ten percent of the annuity payment pursuant to the Gambling Winnings Tax.

The parties agreed that there were no genuine issues of material fact and that the case could be decided on the legal issues. They also agreed to postpone class certification until after all legal issues had been resolved. The parties requested, and the trial court approved, an interlocutory transfer without ruling so that the legal issues could be decided by this court. However, we declined to accept the interlocutory transfer.

On May 19, 2011, the Leighton Petitioners and Willey moved for summary judgment. Before the State's response and cross-motion for summary judgment was filed, the Leighton Petitioners resolved their claims against the State, after which Eby was added as a party. The trial court denied the petitioners' motion and granted the State's cross-motion in part. The court ruled that the Gambling Winnings Tax neither lacked uniformity nor was disproportional, unjust, or unreasonable in violation of the New Hampshire Constitution, and that it did not violate the Commerce Clause of the Federal Constitution. It also found a genuine issue of material fact as to whether Willey was a professional gambler. The trial court set forth factors, including those that the Internal Revenue Service considers when determining whether a taxpayer's activity constitutes a trade or business for federal tax purposes, see Treas. Reg. § 1.183-2(b) (1972), that it intended to consider in deciding whether Willey was a professional gambler.

Thereafter, the petitioners conceded that Willey would not qualify as a professional gambler under the test adopted by the court. They reserved their right to appeal the use of that test and disputed the court's ruling that only a professional gambler could raise as-applied constitutional arguments on behalf of other professional gamblers as a class representative.

In 2012, the declaratory judgment statute was amended so as to provide for expanded "taxpayer standing" to challenge governmental actions. See Laws 2012, ch. 262; RSA 491:22 (Supp. 2013). Thereafter, the petitioners filed a motion for summary judgment arguing that the amendment gave them standing to raise all constitutional issues, including those related to professional gamblers. The State objected and moved to dismiss the petitioners' remaining claims. On December 4, 2012, the court denied the petitioners' motion for summary judgment and granted the State's motion to dismiss. This appeal followed.

II

On appeal, the petitioners contend that the trial court erred by granting the State's motions for summary judgment and to dismiss their claims, and by denying their motions for summary judgment. In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party.

3

City of Concord v. State of N.H., 164 N.H. 130, 133 (2012). Where, as here, the parties agree that there are no genuine issues of material fact in dispute, our task in reviewing the trial court's summary judgment rulings is to determine whether the moving party is entitled to judgment as a matter of law. See id. In such circumstances, the analysis for summary judgment purposes is not meaningfully different from that employed in ruling on a motion to dismiss. See Belcher v. Paine, 136 N.H. 137, 142-43 (1992).

We review the constitutionality of statutes de novo. N.H. Assoc. of Counties v. State of N.H., 158 N.H. 284, 288 (2009). "In reviewing a constitutional challenge to a legislative act, we presume the act to be constitutional and will not declare it invalid except on inescapable grounds; that is, unless a clear and substantial conflict exists between the act and the constitution." City of Concord, 164 N.H. at 134. "A party may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both." Huckins v. McSweeney, ___ N.H. ___ (decided April 11, 2014) (quotation omitted). "A facial challenge is a head-on attack of a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." Id. (quotation omitted). "To prevail on a facial challenge to a statute, the challenger must establish that no set of circumstances exists under which the Act would be valid." Id. (quotation omitted). "An as-applied challenge, on the other hand, concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." Id. (quotation and brackets omitted).

III

We first address the petitioners' facial challenges to the constitutionality of the Gambling Winnings Tax under the New Hampshire Constitution. The petitioners allege that: (1) the tax violates the uniformity requirement of the State Constitution; and (2) the tax is disproportional and unreasonable.

A

The petitioners argue that the Gambling Winnings Tax violated the uniformity requirement of the State Constitution because it taxed gambling winnings at a ten percent rate while interest and dividends are taxed at a five percent rate. They argue that "gambling winnings" and "interest and dividends" are both part of the broader class of "gross income," and that in order to achieve constitutional uniformity throughout that class, the taxes had to be assessed at an equal rate. See Opinion of the Justices, 95 N.H. 537, 539 (1949) ("[G]ross income . . . constitutes a class of property taxable under . . . our Constitution . . . subject, however, to the constitutional requirement of proportionality or equality of rate within [that] class."). They base this

4

assertion on the premise that our previous decisions and advice require that taxes within the separate classes of "gross income" and "net income" be uniform within each class. We disagree with this premise.

In general, "there is no other state in the union with a structure of taxing powers and limits comparable to New Hampshire's." Hurn, State Constitutional Limits on New Hampshire's Taxing Power: Historical Development and Modern State, 7 Pierce L. Rev. 251, 252 (2009). We, therefore, begin with a review of this unique constitutional structure, which frames our analysis.

"Three provisions of the New Hampshire Constitution work in conjunction to ensure the fairness of any scheme of taxation enacted by our legislature." First Berkshire Bus. Trust v. Comm'r, N.H. Dep't of Revenue Admin., 161 N.H. 176, 183 (2010). "These three constitutional provisions require that taxation be just, uniform, equal, and proportional." Id. at 184. "A tax must be in proportion to the actual value of the property subject to tax, and it must operate in a reasonable manner." Id.

First, Part I, Article 12 establishes that "[e]very member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection." N.H. CONST. pt. 1, art. 12. "This article requires that a given class of taxable property be taxed at a uniform rate and that taxes must be not merely proportional, but in due proportion, so that each individual's just share, and no more, shall fall upon him." First Berkshire, 161 N.H. at 183-84 (quotation omitted). Second, Part II, Article 5 authorizes the General Court "to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and residents within, the . . . state." N.H. CONST. pt. II, art. 5. "This section requires that all taxes be proportionate and reasonable, equal in valuation and uniform in rate, and just." First Berkshire, 161 N.H. at 184 (quotation omitted). Third, "Part II, Article 6 grants the legislature broad power to declare property to be taxable or non-taxable based upon a classification of the property's kind or use, but not based upon a classification of the property's owner." Id. "Together, Part II, Articles 5 and 6 permit the disproportionality inherent in taxes levied upon classes of property, so long as there is uniformity and proportionality within each class." N. Country Envtl. Servs. v. State of N.H., 157 N.H. 15, 19 (2008) (quotation omitted).

We have previously advised that "gross income" and "net income" are classes of property that may be taxed at separate rates in conformity with our constitution. See, e.g., Opinion of the Justices, 110 N.H. 117, 122 (1970) ("The Constitution does not require the rate of a tax upon net income to be uniform with that of the existing interest and dividends tax, which is a tax upon certain

5

gross income . . . ."); <u>Opinion of the Justices</u>, 101 N.H. 549, 558 (1958) (stating that "should the tax contemplated . . . be levied upon net income, it would be distinguished from [a] tax . . . the essential characteristics of which are those of a gross income tax"); <u>Opinion of the Justices</u>, 95 N.H. at 539 ("A gross income tax does not differ from a net income tax with respect to the constitutional requirements.  Either form of income constitutes a class of property taxable under . . . our Constitution.").  But contrary to the petitioners' argument, we have not interpreted the Legislature's "broad discretionary powers to classify subjects of taxation" to be so limited as to prevent further classification of income for the purposes of taxation.  <u>See</u> <u>Opinion of the Justices</u>, 117 N.H. 512, 515 (1977).  Rather, the question in determining whether a tax classification violates our constitution is whether the classes of property at issue are "sufficiently distinguishable" so as to "make it apparent that there is just reason" to tax them at different rates.  <u>Id.</u>

For example, in 1977 we were asked to determine whether income derived from the sale or exchange of capital assets could constitutionally be taxed at a rate different from the rate of tax imposed on gross income derived from the receipt of certain interest and dividends.  <u>Id</u>. at 514.  We advised that income from capital gains was sufficiently distinguishable from income from interest and dividends to justify their separate classification and assessment at different rates.  <u>Id</u>. at 516.  The proposed tax analyzed in that advisory opinion happened to be assessed on <u>net</u> income derived from capital gains, as opposed to the existing tax on <u>gross</u> income derived from interest and dividends.  <u>Id</u>.  But we based our conclusion that there was a rational basis for the separate classification of these two forms of income upon their "very different characteristics," not upon the fact that one tax was assessed on net income while the other was assessed on gross income.  <u>Id</u>.

The petitioners assert that the trial court misinterpreted that 1977 advisory opinion, and that we later "confirmed that gross/net income classifications had endured the proliferation of classifications from the 1950s to the 1970s."  In support of this argument, they cite a later advisory opinion in which we wrote that "[g]ross income is a class of property taxable under part two, article six of the New Hampshire Constitution."  <u>Opinion of the Justices</u>, 123 N.H. 296, 300 (1983).  But as we clarified less than two weeks later, in that 1983 <u>Opinion of the Justices</u>, we had advised only that "alternate business profits" as taxed in the proposed bill and "taxable business profits" as taxed under existing law were "both essentially classifications of one class of property; namely, business income," and, for that reason, taxing them at different rates violated the uniformity requirement.  <u>Opinion of the Justices</u>, 123 N.H. 344, 346 (1983).  Our analysis of the proposed bill in our earlier advisory opinion had not focused upon whether it taxed a class of <u>gross</u> income or a class of <u>net</u> income, but rather upon whether it taxed a class of business

income at a different rate than another tax on essentially the <u>same</u> class of business income.[2]

The petitioners argue that even if the Legislature can constitutionally classify different kinds of gross income, gambling winnings are not sufficiently distinct from interest and dividends income to justify their separate classification. We disagree.

"Strictly speaking, the rule of equality and proportionality does not apply to the selection of the subjects of taxation, provided just reasons exist for the selection made." <u>N. Country Envtl. Servs.</u>, 157 N.H. at 19 (quotation omitted). "In this context, just reasons are the equivalent of a reasonable or rational basis." <u>Id</u>. Here, the trial court found that the Legislature had just reasons to tax gambling winnings at a different rate because gambling "presents a social problem properly coming under the exercise and jurisdiction of the police power of the State and which requires strict regulation and supervision." <u>Ratti v. Hinsdale Raceway</u>, 109 N.H. 270, 272 (1969). The petitioners argue that this does not constitute a just reason for the separate classification because no indicia exist in the Gambling Winnings Tax's legislative history to suggest that this was the reason the tax was enacted. Further, they argue, income from gambling winnings is not sufficiently distinct from interest and dividends income so as to justify its separate classification for tax purposes.

The petitioners are correct that the legislative history of the Gambling Winnings Tax does not contain enumerated reasons for its enactment. However, the New Hampshire Constitution requires only that "just reasons <u>exist</u>" in selecting a certain class of property for taxation. <u>N. Country Envtl. Servs.</u>, 157 N.H. at 19 (emphasis added; quotation omitted). Under our rational basis test, the "legitimate governmental interests" served by the statute need not be the Legislature's actual interests in adopting it nor need they be based upon articulated facts. <u>See Cmty. Res. for Justice v. City of Manchester</u>, 154 N.H. 748, 757 (2007). Accordingly, the Legislature need not declare its reasons for passing the tax; it is sufficient that there <u>are</u> just reasons for the classification.

"[T]he constitutionality of a taxation classification depends upon the physical and functional characteristics of the property itself." <u>Opinion of the Justices</u>, 142 N.H. 102, 107 (1997). The inherent differences between the subjects of taxation and similar property or sources of income justify differing

---

[2] Although we also wrote that requiring a business to pay taxes on <u>both</u> "alternate business profits," as proposed, and the existing class of "taxable business profits," under RSA chapter 77-A, could result in unconstitutional double taxation, <u>see Opinion of the Justices</u>, 123 N.H. at 346, such a taxing scheme was "not contemplated in the proposed legislation," <u>Opinion of the Justices</u>, 123 N.H. at 301-02, and this point merely clarified our guidance that the two classes are essentially the same.

tax treatment. See Smith v. N.H. Dep't of Revenue Admin., 141 N.H. 681, 690 (1997) (holding that the inherent differences between banks and other financial institutions constituted just reasons for differing tax treatment); Opinion of the Justices, 117 N.H. at 515 ("The question is therefore whether capital gains are sufficiently distinguishable from interest and dividends as to make it apparent that there is just reason to tax capital gains at a rate different from the rate imposed . . . on income derived from certain interests and dividends.").

The inherent differences between "winnings from lotteries and games of chance" and other forms of income justify their separate treatment for tax purposes. Few other legitimate forms of income result from activity that may be referred to as a "social problem," as explained by the trial court. Gambling winnings are also unique because they result from "lotteries and games of chance," making their receipt dependent, at least in part, upon events that are largely fortuitous, and they result from activity that is recreational for at least most participants. In comparison, "[i]nterest . . . is a form of compensation for the use, or forbearance, or detention of money," while "[d]ividends, such as are taxed pursuant to RSA 77:4, . . . represent a distribution of the earnings and profits of a corporation, partnership, or other association." Opinion of the Justices, 117 N.H. at 516 (quotation omitted).

Given the "very considerable latitude of discretion" left to the Legislature "as to the selection of proper subjects of taxation and the proportion of the tax that shall be laid on each subject," Smith, 141 N.H. at 687, we hold that there were just reasons to classify gambling winnings as a distinct class of income for tax purposes under our constitution.

B

The petitioners next argue that the Gambling Winnings Tax violated the constitutional requirements of fairness, reasonableness, and proportionality because the tax did not allow taxpayers to offset gambling losses against their winnings. N.H. CONST. pt. I, art. 12, pt. II, arts. 5, 6. Here, we address this argument to the extent that the petitioners raise it as a facial challenge to the Gambling Winnings Tax.[3]

The federal tax code allows taxpayers to offset gambling losses to the extent of their gambling winnings. 26 U.S.C. § 165(d) (2012). Several states also allow for setoff of gambling losses against winnings. See, e.g., Minn. Stat. § 290.01, subd. 19 (2007 & Supp. 2012). But contrary to the petitioners' claims, there are states that, at least to some degree, do not allow for the deduction of gambling losses while taxing gambling winnings. See Byrd v.

---

[3] To the extent that the petitioners make this argument as applied to professional gamblers, we address their standing to make such as-applied arguments in Section V(B).

Hamer, 943 N.E.2d 115, 121 (Ill. App. Ct. 2011) (describing Illinois tax law, which carries over deduction from federal tax return for gambling losses incurred only by professional gamblers, not casual gamblers); Dettwiler v. Wisconsin Dept. of Revenue, 731 N.W.2d 663, 666 (Wis. Ct. App. 2007) ("Effective January 1, 2000, gambling losses were no longer offset against gambling winnings under the Wisconsin tax code . . . ."). Moreover, the petitioners cite no authority suggesting that other jurisdictions would consider it unconstitutional to tax gambling winnings without allowing the deduction of gambling losses. Indeed, considering that "there is no other state in the union with a structure of taxing powers and limits comparable to New Hampshire's," Hurn, supra, comparing a New Hampshire tax provision to similar provisions of states that, for example, implement a broad-based personal income tax is of minimal guidance in showing a constitutional deficiency in the former.

"Gross income" is, by definition, simply "[t]otal income . . . before deductions, exemptions, or other tax reductions." Black's Law Dictionary 831 (9th ed. 2009). Thus, in essence, the petitioners' argument boils down to the question of whether the Legislature may tax gross income, or whether doing so is unconstitutionally unfair, unreasonable, and disproportionate. We have stated on a number of occasions that taxes on gross income are proper under the New Hampshire Constitution. See Opinion of the Justices, 123 N.H. at 300 ("Gross income is a class of property taxable under part two, article six of the New Hampshire Constitution."); Opinion of the Justices, 110 N.H. at 117 ("No constitutional barrier stands in the way of the levy of a general income tax . . . upon the gross . . . income of a taxpayer . . . ."); Opinion of the Justices, 95 N.H. at 539 ("[Gross income] constitutes a class of property taxable under the 1903 amendment to our Constitution."). By taxing gambling winnings with no deduction for gambling losses, the Legislature simply exercised its discretion to tax the gross gambling income of taxpayers rather than their net gambling income.[4]

The petitioners cite no New Hampshire authority for the specific proposition that a tax on gross income is unfair, unreasonable, and disproportional. They say only that the Gambling Winnings Tax was unconstitutional because it had "no reference to the ability of the taxpayer to make payment," Thompson v. Kidder, 74 N.H. 89, 96 (1906), and because it was not set at an appropriate level to treat "one's income, to a reasonable amount, . . . as necessarily consumed for the support of [oneself] or of [one's] family, so that only the excess above such amount should be regarded as property increasing [one's] ability to pay taxes," Opinion of the Justices, 82

---

[4] We note that the legislative history shows the Legislature did apparently consider whether to allow the deduction of gambling losses from winnings. See N.H.H.R. Jour. 1125 (2009) (statement of Rep. Neal Kurk) (explaining that not allowing deduction of gambling losses would protect against fraud from winning bettors at racetracks using discarded losing betting slips to offset their own winnings).

N.H. 561, 572 (1927) (quotation omitted). However, neither premise is applicable here, as both quotations are cited out of context. The quotation from Thompson described poll taxes, which have no relationship at all to the taxpayer's income. The tax here, assessed as a percentage of the taxpayer's gambling winnings, by definition was proportional to the amount of winnings, and thus the taxpayer's ability to pay the tax. Thompson, 74 N.H. at 96. The quotation from the 1927 Opinion of the Justices, itself quoting a Massachusetts advisory opinion, referred to a proposed income tax exemption of up to $2,000, which would have set aside, in a literal sense, a discrete "amount . . . necessarily consumed for the support of" the taxpayer and his or her family. Opinion of the Justices, 82 N.H. at 572. This description, made in reference to an income tax exemption, is not applicable to the question of whether an income tax assessed on gross rather than net income is unfair, unreasonable, or disproportionate. Certainly nothing in that opinion suggested that such an exemption was necessary in order to render that tax constitutional.

Where we have found that a tax was unfair, unreasonable, or disproportionate, the constitutional deficiency has been of a much different character than the one the petitioners allege here. See Claremont School Dist. v. Governor, 142 N.H. 462, 470-71 (1997) (holding that property tax was a state tax and was thus disproportionate, unreasonable, and unfair because of discrepancies in tax rates of up to 400% between school districts); Opinion of the Justices, 132 N.H. 777, 783-84 (1990) (stating that proposed statute providing tax credits to business organizations based on number of employees was unreasonable because it provided credits without regard to income or aggregate reasonable compensation expenses, resulting in differing tax rates on the taxation of a single category of property). In sum, we disagree with the petitioners that a tax on gross gambling winnings is inherently "unfair, unreasonable, and disproportional" under our constitution.

IV

We next turn to the petitioners' argument that the Gambling Winnings Tax violated the Federal Commerce Clause. In particular, they argue that the tax violated the "negative aspect" of the Commerce Clause — also referred to as the "dormant Commerce Clause" — because it applied to gambling winnings won by New Hampshire residents both inside and outside the state, as well as to in-state winnings by out-of-state residents. They assert that the trial court erred in failing to apply what is commonly known as the Complete Auto test, see Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977), when it ruled that the Gambling Winnings Tax did not offend the Commerce Clause and granted the State's motion for summary judgment. We do not reach this

10

argument because we conclude that the petitioners lack standing to bring this challenge.[5]

"For a court to hear a party's complaint, the party must have standing to assert the claim." Gen. Elec. Co. v. Comm'r, N.H. Dep't of Revenue Admin., 154 N.H. 457, 461 (2006). "The general rule in New Hampshire is that a party has standing to raise a constitutional issue only when the party's own rights have been or will be directly affected." Id.; see Montenegro v. City of Dover, 162 N.H. 641, 651 (2011). Although the State does not challenge the petitioners' standing to bring their Commerce Clause claim, "a party's standing to bring suit is a question of subject matter jurisdiction, which may be addressed at any time." Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 35 (2005). We may raise the issue of a party's standing sua sponte. See In re Guardianship of Williams, 159 N.H. 318, 322-23 (2009).

The Commerce Clause reserves to Congress the right to "regulate Commerce with foreign Nations, and among the several States." U.S. CONST. art. I, § 8, cl. 3. The Commerce Clause also has a "negative aspect" that "prohibits states from unjustifiably discriminating against or burdening interstate and foreign commerce." Gen. Elec., 154 N.H. at 466. This construction supports the Commerce Clause's purpose of "preventing a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole," the likely result if it were "free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." Smith, 141 N.H. at 691 (quotation omitted). "The core purpose of the dormant Commerce Clause is to prohibit economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Smith v. N.H. Dep't of Revenue Admin., 148 N.H. 536, 538 (2002) (quotation omitted).

In Wine and Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1, 12 (1st Cir. 2007), the Court of Appeals for the First Circuit affirmed the district court's determination that the plaintiffs lacked standing to challenge a Rhode Island in-state residency requirement for liquor licensees under the dormant Commerce Clause. The court held that none of the plaintiffs, as Rhode Island residents, "could conceivably have suffered any cognizable harm as a result of" the residency restriction, and thus they lacked standing to challenge it under the dormant Commerce Clause. Wine and Spirits, 481 F.3d at 12.

Although the court in Wine and Spirits went on to fully address the plaintiffs' dormant Commerce Clause argument against the state restrictions on franchise and chain-store arrangements, id. at 12-16, the argument

---

[5] Because we address the petitioners' standing arguments based on the 2012 amendment to the declaratory judgment statute, RSA 491:22, in Section VI(B), we here confine our analysis to whether the petitioners satisfy standing requirements absent those established by that statute.

11

presented in this appeal is more akin to the one the <u>Wine and Spirits</u> plaintiffs made against the residency requirement. The plaintiffs in <u>Wine and Spirits</u> brought the action in that case because they sought to avoid the nullification of their franchise agreements while retaining their liquor licenses. <u>Id</u>. at 5. They did not suffer, nor did they claim to suffer, any harm under the residency requirements.

The same is true in this case. We recognize that the petitioners paid the Gambling Winnings Tax, and in this sense could claim to have suffered injury in the same way that the plaintiffs in <u>Wine and Spirits</u> would have once the State of Rhode Island had enforced its amended restrictions and either nullified their franchise agreements or revoked their liquor licenses. <u>See</u> <u>Wine and Spirits v. Rhode Island</u>, 418 F.3d 36, 43-44 (1st Cir. 2005). But also like the plaintiffs in <u>Wine and Spirits</u>, neither petitioner here claims to have suffered an injury that has a causal nexus to a dormant Commerce Clause violation. Neither petitioner claims to have suffered harm under the Gambling Winnings Tax due to an unjustifiable discrimination against or burdening of interstate or foreign commerce. Nor can they claim that their rights or interests will be so affected in the future, given that the tax was repealed in 2011. Eby is a New Hampshire resident who paid taxes on a winning scratch ticket purchased in New Hampshire, and alleges no injury related to any participation in interstate commerce. Willey, on the other hand, did derive the entirety of his gambling winnings from out-of-state sources for the portion of the 2009 tax year in which the tax was in effect. However, his out-of-state winnings were taxed at the same rate as they would have been if they were derived from New Hampshire sources. He does not allege that he was, in fact, taxed disproportionately because his gambling winnings were derived from a different state, that he was doubly taxed by both New Hampshire and another state, or that he was discouraged from gambling in certain states because of the potential for double taxation.[6] At best, Willey alleges only that the Gambling Winnings Tax gave rise to the mere possibility of disproportionate or double taxation. Because the petitioners fail to show any cognizable harm related to the alleged Commerce Clause violation, they consequently lack standing to raise this challenge, and we do not consider it further.

V

We next turn to whether the petitioners have standing to bring their as-applied challenges. The petitioners argue that the Gambling Winnings Tax: (1)

---

[6] Insofar as petitioner Willey suggests that the Gambling Winnings Tax fails the <u>Complete Auto</u> test because it lacks a provision granting a credit or offset against the tax for taxes that could be imposed by the state where the winnings occurred, we observe that he would benefit from the credit or offset only if he actually paid a tax imposed by the other state. Because Willey does not allege that he was taxed by another state on his gambling winnings, it follows that he was not harmed in any way by the absence of such a provision in former RSA 77:38-:50.

was unconstitutionally retrospective as applied to previous lottery winners receiving their winnings through annuity payments; (2) was a proscribed occupation tax as applied to professional gamblers; and (3) violated the State and Federal Due Process and Equal Protection rights of professional gamblers. We do not reach these arguments because the petitioners lack standing to bring the as-applied claims of annuitants or professional gamblers. We analyze their standing to bring the claims of each, in turn.

A

We first analyze the petitioners' standing to bring their retrospectivity claim on behalf of pre-enactment lottery winners receiving their winnings through annuities. The petitioners argue that the Gambling Winnings Tax was unconstitutional as applied to persons who won the lottery prior to the tax's enactment and received some of those winnings through an annuity.

However, Eby and Willey do not claim to have paid taxes on gambling winnings from an annuity. As set forth above, a party may challenge the constitutionality of a statute only when the party's own rights have been or will be directly affected. Gen. Elec., 154 N.H. at 461. The petitioners originally raised this argument when the Leighton Petitioners, who had suffered the injury here alleged, were still parties to this action. However, because neither Eby nor Willey has established standing to advance this claim, we find that the trial court correctly declined to address it.

B

The issue of the petitioners' standing to raise the claims of professional gamblers turns on whether Willey is a professional gambler. In its order on the parties' cross-motions for summary judgment, the trial court denied both motions with respect to Willey because a genuine issue of material fact existed as to whether he was a professional gambler. The trial court further stated that it would make this determination by applying factors drawn from the Internal Revenue Service's criteria and used by at least one other court. Thereafter, the petitioners conceded that Willey was not a professional gambler under the IRS criteria, although they reserved their right to appeal the trial court's use of those criteria.

On appeal, the petitioners assert that the State is estopped from disputing that Willey was a professional gambler because it had already stipulated to that fact in the Interlocutory Transfer Statement (ITS) the parties submitted in their failed effort to have this court accept an interlocutory appeal of this case. They also argue that the trial court erred in adopting the IRS criteria. Both arguments fail.

13

The ITS recites that "[t]he action was initiated by . . . a professional gambler who derived 'gambling winnings' through earned income." It further states that "there are no material facts in dispute." The petitioners contend that these statements in the jointly filed ITS amount to admissions by the State that Willey is a professional gambler and that this fact is not in dispute.[7]

"The doctrine of judicial estoppel protects judicial integrity by preventing a party from prevailing in one phase of a case using one argument and then relying upon a contradictory argument to prevail in another phase." In re Zachary G., 159 N.H. 146, 152 (2009) (quotation omitted). "The general function of judicial estoppel is to prevent abuse of the judicial process, resulting in an affront to the integrity of the courts." Pike v. Mullikin, 158 N.H. 267, 270 (2009) (quotation omitted).

> While the circumstances under which judicial estoppel may be invoked vary, three factors typically inform the doctrine's application: (1) whether the party's later position is clearly inconsistent with the party's earlier position; (2) whether the earlier position was accepted by the court; and (3) whether the party seeking to assert a later inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id.

We agree with the trial court that the State derives no unfair advantage nor imposes any unfair detriment on the petitioners by challenging Willey's status as a professional gambler, and thus his standing to contest the constitutionality of the Gambling Winnings Tax as applied to professional gamblers. Given that the interlocutory transfer request was denied by this court, the petitioners cannot show any particular unfair advantage to the State or unfair detriment to themselves in the case before the trial court that resulted from the State challenging Willey's status as a professional gambler, whether or not such a position was inconsistent with the ITS. See In the Matter of Carr & Edmunds, 156 N.H. 498, 502-03 (2007) (holding that father failed to establish that any unfairness resulted from mother's allegedly inconsistent positions in seeking to modify child support pursuant to statutory right); cf. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 849 (2005) (holding that defendant would derive an unfair advantage by taking a factual position inconsistent with one taken in an earlier action in which defendant prevailed). Had the State

---

[7] To the extent that the petitioners' argument could be interpreted as asserting that the State stipulated to their standing to raise claims on behalf of professional gamblers, we note that a party cannot confer subject matter jurisdiction by waiver where it does not exist, and any court order that acts on the merits based on a waiver would be void. See In the Matter of Goulart & Goulart, 158 N.H. 328, 332 (2009).

challenged whether Willey was a professional gambler prior to the parties' interlocutory transfer request, the State may have objected to the transfer outright, or the trial court could have denied the request or included the question of whether Willey was a professional gambler in the request. Under any of these scenarios, after we denied the interlocutory transfer, the case would have followed the same course as it did. Therefore, application of judicial estoppel is not warranted here.[8]

The petitioners next argue that the trial court committed an error of law in adopting a multi-faceted test, including factors promulgated by the IRS, in determining whether a taxpayer's activity constitutes a trade or business for tax purposes. No New Hampshire case defines "professional gambler." The trial court relied upon Busch v. Commissioner of Revenue, 713 N.W.2d 337, 346-48 (Minn. 2006), in which the Minnesota Supreme Court analyzed whether the relator was a professional gambler by applying factors from Commissioner v. Groetzinger, 480 U.S. 23, 35-36 (1987), and IRS regulations. Busch, 713 N.W.2d at 346-48. As described in Busch, the Supreme Court in Groetzinger considered "the regularity of Groetzinger's gambling, the effort he exerted, the skill that he applied, and his intent to produce a livelihood via gambling." Busch, 713 N.W.2d at 347 (citing Groetzinger, 480 U.S. at 35-36). The Minnesota court then set out the IRS factors, which include:

> (1) the manner in which the taxpayer carries on the activity (e.g., keeping records in a businesslike way); (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.

Id. (citing Treas. Reg. § 1.183-2(b)). The Busch court noted that these federal sources were particularly persuasive in that case because the Minnesota tax code incorporated aspects of the federal code.

The petitioners argue that the trial court should not have borrowed a legal standard from a source other than the tax statute under review, and that doing so improperly added language to the statute. They argue that the court should have "applied a test on a case-by-case basis" and determined that

---

[8] To the extent that the petitioners argue that the State derived an unfair litigation advantage because its prior stipulation was a judicial admission, this is a separate argument that was not preserved for appeal. Therefore, we do not address it. See State v. Noucas, 165 N.H. 146, 152 (2013).

Willey was a professional gambler because he had derived almost all of his earned income from gambling for a period of three years, and he had reported $184,700 in gambling winnings for the portion of 2009 in which the Gambling Winnings Tax was in effect.

The State asserts that if these facts suffice to determine that Willey was a professional gambler, then any individual without other significant income who gambled a significant enough amount of money could qualify as a "professional gambler," regardless of other relevant considerations. We agree that this is not the test. The trial court properly concluded that the <u>Groetzinger</u> and IRS factors listed in <u>Hughes</u> are relevant to the fact-based determination of whether a party is a professional gambler. We need not determine whether other factors would also be relevant to this determination, as that question is not before us.

Because the petitioners have failed to show that the trial court erred in utilizing the multi-faceted test as described above, because Willey concedes that he does not qualify as a professional gambler under that test, and because he did not present the trial court with any additional facts establishing that he is a professional gambler, we hold that the petitioners lack standing to raise their challenges that the Gambling Winnings Tax is unconstitutional as applied to professional gamblers.

VI

In their remaining arguments, the petitioners contend: (1) that Willey has standing as a putative class representative to raise arguments on behalf of all persons in the class; and (2) that the Legislature's 2012 amendment to the declaratory judgment statute gives the petitioners standing to bring an action seeking a declaratory judgment that the tax was unconstitutional. We are not persuaded.

A

First, the petitioners argue that, because Willey filed this case as a class action on behalf of all persons subject to the Gambling Winnings Tax, he has standing to raise <u>all</u> arguments on behalf of <u>all</u> others in the class, <u>i.e.</u>, all those who paid the Gambling Winnings Tax.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011) (quotation omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Id</u>. (quotations omitted). Superior Court Civil Rule 16 sets forth a similar requirement for class representatives. See <u>Super. Ct. Civ. R.</u>

16(a)(2). Because Rule 16 and Federal Rule of Civil Procedure 23 are similar, "we rely upon federal cases interpreting the federal rule as analytic aids." See In re Bayview Crematory, LLC, 155 N.H. 781, 784 (2007) (construing former Superior Court Rule 27-A, which was identical to Superior Court Civil Rule 16).

We disagree with the petitioners. The fact that the petitioners brought this case as a class action does not exempt them from the requirement that they have standing. Although the class certification determination was postponed until after the ruling on the merits, this does not mean that we may simply assume that they have standing to raise challenges to the statute on behalf of any members of the putative class. For example, because Willey has not established that he is a professional gambler, he lacks standing to raise the as-applied constitutional claims of professional gamblers notwithstanding that this case has been filed as a class action. In order to represent a class, the petitioners must be part of that class, possessing the same interest and suffering the same injury as the class members. Even the cases cited by the petitioners in support of their argument are, in fact, fully consistent with this rule. See Kinney v. Metro Global Media, Inc., 170 F. Supp. 2d 173, 181 (D.R.I. 2001) (holding that putative class representatives had standing to represent the class, even when they owned stock for only part of lengthy class period, because they alleged a "common course" of conduct to defraud over that entire period, including the period during which they owned stock); Gen. Elec. Co., 154 N.H. at 463 (holding that petitioner had standing to challenge constitutionality of tax deduction for which it did not qualify precisely because it had been denied the benefit of that deduction).

Because the petitioners have not shown that they have suffered harm under the Commerce Clause, are professional gamblers, or are gambling winnings annuity recipients, they have not suffered the same injury as the members of these subclasses they claim to represent, and thus they have not demonstrated their entitlement to act as class representatives for the members of those subclasses.

B

Finally, the petitioners argue that the 2012 amendment to RSA 491:22 grants them standing as taxpayers to raise all constitutional deficiencies of the Gambling Winnings Tax.

We review matters of statutory interpretation de novo. Appeal of Phillips, 165 N.H. 226, 230 (2013). "On questions of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of a statute considered as a whole." Id. "We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used." Id. "We interpret legislative intent from the statute as written and will not consider

17

what the legislature might have said or add language that the legislature did not see fit to include." Id.

The Legislature amended RSA 491:22, I, in 2012 by adding the emphasized language, as follows:

> I. Any person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive. The taxpayers of a taxing district in this state shall be deemed to have an equitable right and interest in the preservation of an orderly and lawful government within such district; therefore any taxpayer in the jurisdiction of the taxing district shall have standing to petition for relief under this section when it is alleged that the taxing district or any agency or authority thereof has engaged, or proposes to engage, in conduct that is unlawful or unauthorized, and in such a case the taxpayer shall not have to demonstrate that his or her personal rights were impaired or prejudiced. The preceding sentence shall not be deemed to convey standing to any person (a) to challenge a decision of any state court if the person was not a party to the action in which the decision was rendered, or (b) to challenge the decision of any board, commission, agency, or other authority of the state or any municipality, school district, village district, or county if there exists a right to appeal the decision under RSA 541 or any other statute and the person seeking to challenge the decision is not entitled to appeal under the applicable statute. The existence of an adequate remedy at law or in equity shall not preclude any person from obtaining such declaratory relief. However, the provisions of this paragraph shall not affect the burden of proof under RSA 491:22-a or permit awards of costs and attorney's fees under RSA 491:22-b in declaratory judgment actions that are not for the purpose of determining insurance coverage.

Laws 2012, 262:1 (emphasis added). Under the plain language of the amended statute, the petitioners' argument fails. Although it confers broad taxpayer standing, the amended declaratory judgment statute contains the limitation that it does not "convey standing . . . to challenge the decision of any board, commission, agency, or other authority . . . if there exists a right to appeal the decision under RSA 541 or any other statute and the person seeking to challenge the decision is not entitled to appeal under the applicable statute." Put another way, where the Legislature has already conferred standing, by statute, upon a certain class of persons to challenge the decision of a board,

18

commission, agency or other authority, RSA 491:22 does not confer standing upon a larger class of petitioners, simply because they are taxpayers.

In the case of a taxpayer challenge to the constitutionality of an assessed tax, such an alternative, statutory scheme exists. RSA 21-J:28-b (2012) sets forth procedures for a taxpayer to appeal a tax assessment made by the New Hampshire Department of Revenue Administration (DRA). Under the statute, following a petition for redetermination and subsequent petition for reconsideration, a "taxpayer may appeal such decision by written application to the board of tax and land appeals or the superior court." RSA 21-J:28-b, IV. The statute limits the legal issues to be considered on appeal to those raised in the prior petitions for redetermination and reconsideration, "with the exception that the taxpayer may raise additional legal claims addressing constitutional issues." Id. (emphasis added). The procedures outlined in RSA 21-J:28-a (dealing with the refund or credit of overpayment of taxes) and :28-b are "the exclusive method by which taxpayers may challenge their liability for any tax, or the application to them of any provision" of the statutes governing the DRA. RSA 21-J:28-a, VI (2012).

RSA 21-J:28-b thus creates a right to challenge the decision of a "board, commission, agency, or other authority" as contemplated in the exception to RSA 491:22 — in this case, the assessment of a tax by the DRA. Here, however, the petitioners seek to challenge assessments against persons other than themselves. But because the petitioners have not been subjected to the Gambling Winnings Tax in the circumstances in which they claim it is unconstitutional — i.e., as applied to those persons facing multi-state taxation, professional gamblers, and gambling-winnings annuity recipients — and therefore are not among those entitled to pursue the appellate process under RSA 21-J:28-b, it follows that they also lack standing to pursue such claims under the amended version of RSA 491:22.

VII

In sum, we hold: (1) that the Gambling Winnings Tax neither lacked uniformity nor was disproportional and unreasonable; and (2) that the petitioners lack standing to bring their remaining challenges to the tax.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

19